822 So.2d 1261 (2002)
Richard Harold ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. SC01-24.
Supreme Court of Florida.
June 13, 2002.
*1263 Robert T. Strain, Assistant CCRC, April Haughey, Assistant CCRC, and Elizabeth A. Williams, Staff Counsel, Capital Collateral Regional Counsel-Middle Region, Tampa, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Richard Harold Anderson appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the trial court's denial of relief.
Anderson was convicted for the first-degree murder of Robert Grantham. The facts of this case were set out in detail in this Court's opinion on direct appeal:
Anderson's conviction rested primarily upon the trial testimony of his girlfriend, Connie Beasley. Beasley testified at trial that in 1987 Grantham had offered her $30,000 in exchange for her sexual favors. She rejected Grantham's offer but told Anderson of the proposal. Beasley testified that Anderson believed Grantham was rich and would return from a gambling trip to Las Vegas with a lot of money. Anderson told her to agree to spend one night with Grantham for $10,000. Anderson and Beasley prearranged for her to get Grantham drunk, after which Anderson would rob him. Beasley agreed to implement the plan by meeting Grantham on May 7, 1987, when he returned from Las Vegas. Following drinks and dinner, Beasley lured Grantham to Anderson's apartment. Anderson arrived later, ostensibly to return Beasley's car and to request a ride. Grantham agreed to drive Anderson, and Anderson insisted that Beasley join them. While in the car, Anderson shot Grantham four times and left Grantham's body in a wooded area. He then drove to the Tampa Airport, abandoned the car, and returned with Beasley to the apartment. He cut open Grantham's satchel and found $2,600.
The state also presented the testimony of two of Anderson's business acquaintances. David Barile testified that Anderson had told him the day after the murder that he had shot a man four times and dumped his body in the woods. Larry Moyer testified that Anderson had said on June 2, 1987, that he and his girlfriend "wasted a guy that was supposed to have a million dollars, and he only had $3,000." A firearms expert testified that four discharged .22-caliber cartridge casings found in Grantham's car had been fired from a pistol recovered from the Hillsborough River. Florida Department of Law Enforcement ("FDLE") agents recovered the pistol near the bridge where, according to Beasley, Anderson had thrown it.
Anderson v. State, 574 So.2d 87, 89-90 (Fla.1991).
The jury recommended the death penalty by an eleven-to-one vote. The trial court found two aggravating circumstances,[1] and a single mitigating circumstance,[2] *1264 and imposed the death penalty. See id. at 90. This Court affirmed Anderson's conviction on direct appeal. See id. at 89. The United States Supreme Court denied Anderson's petition for writ of certiorari. See Anderson v. Florida, 502 U.S. 834, 112 S.Ct. 114, 116 L.Ed.2d 83 (1991).
Anderson timely filed his initial rule 3.850 motion, which the trial court summarily denied because the trial court concluded that: (1) Anderson failed to satisfy the oath requirement contained in rule 3.850, and (2) the motion was facially insufficient because Anderson set forth grounds that should have been or were raised on direct appeal and that contained mere conclusions. However, on appeal, this Court reversed the summary denial and remanded the case to the trial court for completion of public records requests and allowed Anderson to amend his postconviction motion based upon information generated from the public records production. See Anderson v. State, 627 So.2d 1170, 1171-72 (Fla.1993).
Upon remand, Anderson filed two amended motions, and on his third amended motion raised thirteen claims.[3] Following a Huff[4] hearing, the trial court summarily denied all claims other than the claim that the state attorneys' office knowingly presented perjured testimony to the grand jury. Following an evidentiary hearing on this claim, the trial court entered an order denying relief on all of Anderson's claims. Anderson now appeals the trial court's denial of postconviction relief, raising six claims for this Court's review.[5]
The first issue presented by Anderson's appeal is whether the trial court erred in denying relief after an evidentiary hearing as to the issue of Beasley's perjured testimony before the grand jury. This issue was raised on direct appeal, wherein this Court stated:

*1265 Anderson contends in his first point that the trial court erred when it failed to dismiss the indictment because the indictment was based upon Beasley's perjured testimony before the grand jury. During her trial testimony, Beasley admitted that her grand jury testimony differed from her trial testimony. When she appeared before the grand jury on July 15, 1987, she minimized her role in the killing and said that Grantham had been killed outside of her presence. She told the grand jury that Anderson and Grantham went for a ride while she remained in Anderson's apartment. When Anderson returned alone, he had blood all over the front of his shirt and on his hands, and his eyes were wild. She charged that Anderson admitted killing Grantham and threatened to kill her unless she helped him take Grantham's car to Tampa Airport.
After testifying before the grand jury, Beasley told a different story to FDLE agents. She told the agents on July 16 that Anderson walked into the apartment while Grantham was trying to rape her. Anderson pulled Grantham away, told her to get dressed, and forced Grantham into the car at gunpoint. Beasley also stated that she told agents that she saw Anderson shoot Grantham four times.
On July 24, Beasley negotiated a plea to third-degree murder with a maximum sentence of three years. Beasley told the prosecutor that she was present when Anderson shot and killed Grantham in accordance with a prearranged plan. She told the same story at trial. Anderson argues that because the state knew prior to trial that Beasley's grand jury testimony was perjured and did nothing to correct the testimony, the indictment should have been dismissed.
. . . .
We agree with the authorities cited by Anderson that due process is violated if a prosecutor permits a defendant to be tried upon an indictment which he or she knows is based on perjured, material testimony without informing the court, opposing counsel, and the grand jury. This policy is predicated on the belief that deliberate deception of the court and jury by the presentation of evidence known by the prosecutor to be false "involve[s] a corruption of the truthseeking function of the trial process," United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and is "incompatible with `rudimentary demands of justice.'" Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (citation omitted). Moreover, deliberate deception is inconsistent with any principle implicit in "any concept of ordered liberty," Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and with the ethical obligation of the prosecutor to respect the independent status of the grand jury. Standards For Criminal Justice § 3-3.5, 3-483-49 (2d ed.1980); United States v. Hogan, 712 F.2d 757, 759-60 (2d Cir.1983); Pelchat, 476 N.Y.S.2d 79, 464 N.E.2d at 453 (the "cardinal purpose" of the grand jury is to shield the defendant against prosecutorial excesses and the protection is destroyed if the prosecution may proceed upon an empty indictment).
The Florida Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Art. I, § 9, Fla. Const. The state violates that section when it requires a person to stand trial and defend himself or herself against charges that it knows are based upon perjured, material evidence. Governmental misconduct that violates a defendant's due process rights under the Florida constitution *1266 requires dismissal of criminal charges. State v. Glosson, 462 So.2d 1082, 1085 (Fla.1985).
However, this principle is unavailing in Anderson's case because Beasley's grand jury testimony, although false in part, was not false in any material respect that would have affected the indictment. In every statement Beasley made, she consistently accused Anderson of the murder. Before the grand jury, she accused Anderson, but claimed he was alone when he murdered Grantham. At trial, she again accused Anderson, but switched her role in the murder from nonparticipant to unwilling, after-the-fact accomplice. Although Beasley's role changed, Anderson's did not. Here, we are not faced with subsequent testimony that can be said to remove the underpinnings of the indictment. On the contrary, Beasley's later testimony would have strengthened the possibility of an indictment because she was an eyewitness to the murder. Thus, Beasley's perjurious grand jury testimony could have had no factual bearing on the grand jury's decision to indict Anderson for the murder. Nor are we faced with any deliberate subornation. This is not a case where the state knowingly presented false testimony to the grand jury. For these reasons, we reject Anderson's first claim.
Anderson v. State, 574 So.2d at 90-92 (citations omitted) (emphasis supplied).
In his postconviction motion, Anderson asserted that he had evidence that the State did, in fact, knowingly present Beasley's perjured testimony to the grand jury. After conducting an evidentiary hearing, the trial court concluded:
That at the time the witness testified before the Grand Jury her testimony as far as the Defendant's involvement was consistent. She was trying to minimize her involvement but her basic testimony concerning the actions of the Defendant were true.
That the State Attorney in good faith believed the witness was going to testify truthfully and in good faith presented her testimony to the Grand Jury.
. . . .
There is absolutely no evidence or basis to believe the end result of an indictment and a conviction for first degree murder would have been different.
The trial court's findings that the State did not knowingly present the grand jury with perjured testimony are supported by competent substantial evidence. See Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999). Moreover, as to whether the differences in the testimony were material, the record is the same now as it was during the direct appeal when this issue was raised and denied. We decline to revisit our conclusion as to materiality. Accordingly, this claim is denied.
The second issue presented by Anderson's appeal is whether the trial court erred in denying an evidentiary hearing on several Brady subclaims. Anderson asserts that the trial court must have "inadvertently ignored" several Brady subclaims raised within Claim I of the 3.850 motion. However, at the Huff hearing, Anderson's counsel stated that the perjury before the grand jury "essentially is the basis for Claim I, the prosecutorial misconduct." Although the trial court inquired whether there were any other issues to be discussed, collateral counsel never asserted that an evidentiary hearing was required for the additional Brady subclaims. Moreover, there is no indication that during the evidentiary hearing Anderson was prevented from calling additional witnesses, and Anderson did not attempt to introduce, or argue that he should be permitted to introduce, evidence *1267 on these Brady subclaims. Accordingly, based on the record in this case, we conclude that Anderson intentionally abandoned the presentation of any Brady subclaims.
The third issue presented by Anderson's appeal is whether the trial court erred in denying an evidentiary hearing on the claim of ineffective assistance of counsel at the penalty phase. In connection with this claim, it is important to note that Anderson explicitly waived his right to present mitigating evidence. The primary ground for Anderson's ineffective assistance claim is that Anderson's counsel was ineffective in not making a complete record regarding mitigation witness testimony that could have been presented.
Immediately before defense counsel's penalty phase presentation, counsel informed the court that Anderson did not wish to present any witnesses in mitigation. The following exchange occurred between counsel, Anderson, and the trial judge:
THE COURT: Defense ready to proceed?
MR. OBER: Judge, before we do, and before the jury's brought back in, I would like to put a few matters on the record with Mr. Anderson, and I would request that he be allowed to approach this bench so we can communicate with the Court.
THE COURT: Yes.
MR. OBER: Judge, at this time, I would announce to the Court and certainly allow the Court, for the limited purpose of this inquiry, to address Mr. Anderson, but based on my involvement in this case and also with the assistance of Mr. Ashwell, we have uncovered many witnesses that I feel could testify in Mr. Anderson's behalf, favorably to him, during the second phase. And I would cite the names of those individuals which we have found. That would be Dr. Robert M. Berland; William Anderson, who is Mr. Anderson's father; Helen Anderson, his mother; David Anderson, his brother; Vickie Barber, his sister; Griffin Simmons, a sister of his; also a Joyce Wilson, a witness; and his son, Kyle Anderson. In addition to that, we have gone to the correctional institute of individuals thatof individuals in the system who know Mr. Anderson based on his past incarceration, one Chaplain William Hanawalt, Major Sammy Hill, who is a correctional officer at Zephyrhills Correctional Institute and Superintendent Ray Henderson at the Department of Corrections in Lauderhill, Florida. Additionally, there are other witnesses including employers and employees of Mr. Anderson, his friends, including Kay Bennett, who I believe could lend some assistance to Mr. Anderson during this portion of the proceeding. After very great detail with him in the presence of Mr. Fuente, Mr. Ashwell, myself, and Mr. Anderson, over the portion of time that I've been involved in this, he has never wavered in his desire not to have any of these people testify during the course of this second phase proceeding. I have told him that I believe it to be in his best interest, and I'm announcing that for the record. And he has commanded me not to call these individuals because that is his desire.
THE COURT: You wish to question Mr. Anderson concerning what you just said Mr. Ober?
MR. OBER: Mr. Anderson, you heard my statement to Judge Graybill. Is there anything that you would like to add to that? Do you concur in the statements I made or do you disagree *1268 with them, or do you, at this time, want any individuals, those I mentioned or anyone else that, perhaps, we hadn't discussed, who will assist you in this second phase proceeding?
ANDERSON: I concur with the statements you made.
MR. OBER: And
ANDERSON: I would rather not have any witnesses testify on my behalf that you mentioned or that could, in fact, be called.
THE COURT: Mr. Anderson, are you on any kind of drugs or medication that would affect your ability to understand what's going on today?
ANDERSON: No, sir, not at all.
THE COURT: All right. Mr. Ober, you put it in the record. Mr. Anderson has responded.
In Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993), this Court outlined the procedure that must be followed when a defendant waives the presentation of mitigating evidence:
[C]ounsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence. However, this Court decided Koon five years after the trial in the present case, and the opinion applied prospectively only. See Allen v. State, 662 So.2d 323, 329 (Fla.1995). Trial counsel cannot be deemed deficient for failing to foresee Koon. Cf. Downs v. State, 740 So.2d 506, 517 n. 18 (Fla.1999) (holding appellate counsel not ineffective for failing to foresee subsequent case law that may have benefitted the defendant). Moreover, counsel did proffer the witnesses that he believed could have benefitted Anderson, and the trial court did engage in an on-the-record colloquy. Accordingly, we conclude there was no error in the trial court's summary denial of this claim because the record conclusively demonstrates that there is no merit to this aspect of Anderson's ineffective assistance of counsel claim.[6]
The fourth issue presented by Anderson's appeal is whether cumulative substantive and procedural errors deprived Anderson of a fundamentally fair trial. In his rule 3.850 motion, and in the current issue raised on appeal, Anderson failed to brief and explain what the alleged cumulative errors are, and what their impact is on this case. Thus, the claim is waived. See Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").
The fifth issue presented by Anderson's appeal is whether the trial court erred in denying an evidentiary *1269 hearing on the failure to establish corpus delicti. In this case, trial counsel moved for judgment of acquittal at the close of the State's evidence and again at the close of all the evidence, arguing that the State failed to prove the corpus delicti of first-degree murder. However, in this Court's decision on Anderson's direct appeal, we concluded that there was "substantial competent evidence to support the conviction of first-degree murder." Anderson, 574 So.2d at 94. To the extent Anderson seeks a second appeal on this issue, his claim is procedurally barred because "[p]roceedings under rule 3.850 are not to be used as a second appeal." Thompson v. State, 759 So.2d 650, 661 (Fla.2000) (quoting Rutherford v. State, 727 So.2d 216, 218-19 n. 2 (Fla.1998)).
An additional component of Anderson's corpus delicti argument is that counsel was ineffective for failing to investigate or discover that Grantham suffered from a history of mental illness, and that he was a convicted felon with a motivation to disappear. Anderson asserts that had counsel presented such evidence, the jury may have believed that Grantham was not dead. However, in Anderson's postconviction motion on this claim, Anderson conceded that trial counsel produced evidence rebutting the State's argument that Grantham was dead through the testimony of Robin Boney and Jackie O'Hara, who stated that Grantham had disappeared for an extended period of time at least once before. Given the effort that Anderson concedes was provided by trial counsel, the failure of trial counsel to take the additional step of presenting evidence that Grantham had antisocial personality disorder and had been a convicted felon did not establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Rutherford, 727 So.2d at 219-20. Accordingly, we conclude that the deficiency prong of Strickland has been conclusively rebutted and the trial court did not err in summarily denying relief on this claim.
The final issue presented by Anderson's appeal is whether the trial court erred in denying an evidentiary hearing on the penalty phase jury instructions, and whether trial counsel was ineffective for failing to raise these claims. Anderson's claims are procedurally barred. This Court has explicitly stated that postconviction challenges to the constitutionality of jury instructions will not be entertained unless there has been an objection on constitutional grounds at trial for preservation of appellate review and the issue has been asserted on direct appeal. See Jackson v. State, 648 So.2d 85, 90 (Fla. 1994).
Accordingly, we affirm the trial court's order denying relief in all respects.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
QUINCE, J., recused.
NOTES
[1] The trial court found that Anderson previously had been convicted of another capital felony, and treated as one aggravating circumstance that the murder was committed for pecuniary gain, and in a cold, calculated, and premeditated manner ("CCP").
[2] Anderson's accomplice, Connie Beasley, was allowed to plead guilty to murder in the third degree, for which she could receive a maximum potential sentence of three years' imprisonment. See id. at 90 n. 3.
[3] These claims included: (1) the state attorneys' office knowingly presented perjured testimony to the grand jury; (2) there was insufficient probable cause to issue a pin register and wiretap; (3) newly discovered evidence establishes that Anderson's conviction is unreliable; (4) ineffective assistance of counsel during the guilt phase; (5) ineffective assistance of counsel during the penalty phase; (6) failure to establish corpus delicti; (7) the trial court erred in refusing to consider mitigation established by the evidence; (8) defense counsel was ineffective for failing to correct comments and instructions that misled the jury during sentencing; (9) Anderson was denied a reliable sentencing because of an improper jury instruction that a single act supported two aggravators; (10) the penalty phase instructions improperly shifted the burden to Anderson to prove that death was inappropriate; (11) Anderson's sentence was disproportionate with the sentence of witness Beasley; (12) cumulative error; and (13) execution by electrocution is cruel and unusual punishment.
[4] Huff v. State, 622 So.2d 982 (Fla.1993).
[5] These claims are: (1) the trial court erred in denying relief after an evidentiary hearing as to the perjured testimony before the grand jury; (2) the trial court erred in denying an evidentiary hearing on several claims under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (3) the trial court erred in denying an evidentiary hearing on the claim of ineffective assistance of counsel at the penalty phase; (4) cumulative substantive and procedural errors deprived Anderson of a fundamentally fair trial; (5) the trial court erred in denying an evidentiary hearing on the failure to establish corpus delicti; (6) the trial court erred in denying an evidentiary hearing on the penalty phase jury instructions, and trial counsel was ineffective for failing to raise these claims.
[6] The remaining grounds for Anderson's claim of ineffective assistance of counsel during the penalty phase are all legally insufficient in that they fail to allege how Anderson was prejudiced, especially in light of the fact that Anderson waived the presentation of mitigating evidence. See Sireci v. State, 773 So.2d 34, 40 n. 11 (Fla.2000) ("We find these allegations to be legally and facially insufficient to warrant relief under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because at no point has Sireci alleged how he was prejudiced by counsel's failure to object or raise the asserted error.").