[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-10122-P

_____

RICHARD HAROLD ANDERSON,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT OF
CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 31, 2006)

Before BLACK, HULL and PRYOR, Circuit Judges.

BY THE COURT:

Richard Harold Anderson, a Florida prisoner under a sentence of death, seeks a certificate of appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2254 federal habeas corpus petition. 28 U.S.C. § 2253(c). We deny the application for a COA because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See id.* § 2253(c)(2).

## I.  BACKGROUND

In February 1988, Petitioner was convicted for the first-degree murder of Robert Grantham and sentenced to death. The Florida Supreme Court provided the following summary of the facts adduced at trial:

> Anderson's conviction rested primarily upon the trial testimony of his girlfriend, Connie Beasley. Beasley testified at trial that in 1987 Grantham had offered her $30,000 in exchange for her sexual favors. She rejected Grantham's offer but told Anderson of the proposal. Beasley testified that Anderson believed Grantham was rich and would return from a gambling trip to Las Vegas with a lot of money. Anderson told her to agree to spend one night with Grantham for $10,000. Anderson and Beasley prearranged for her to get Grantham drunk, after which Anderson would rob him. Beasley agreed to implement the plan by meeting Grantham on May 7, 1987, when he returned from Las Vegas. Following drinks and dinner, Beasley lured Grantham to Anderson's apartment. Anderson arrived later, ostensibly to return Beasley's car and to request a ride. Grantham agreed to drive Anderson, and Anderson insisted that Beasley join them. While in the car, Anderson shot Grantham four times and left Grantham's body in a wooded area. He then drove to the Tampa Airport, abandoned the car, and returned with Beasley to the apartment. He cut open Grantham's satchel and found $2,600.

2

The state also presented the testimony of two of Anderson's business acquaintances. David Barile testified that Anderson had told him the day after the murder that he had shot a man four times and dumped his body in the woods. Larry Moyer testified that Anderson had said on June 2, 1987, that he and his girlfriend "wasted a guy that was supposed to have a million dollars, and he only had $3,000." A firearms expert testified that four discharged .22-caliber cartridge casings found in Grantham's car had been fired from a pistol recovered from the Hillsborough River. Florida Department of Law Enforcement ("FDLE") agents recovered the pistol near the bridge where, according to Beasley, Anderson had thrown it.

. . . .

Anderson refused to permit defense counsel to call any witnesses on his behalf during the penalty phase. Defense counsel merely introduced the information charging Beasley, Anderson's girlfriend, with third-degree murder, to show that Anderson was treated more harshly than Beasley. The jury recommended the death penalty by an eleven-to-one vote. The trial court found two aggravating circumstances [Anderson had been convicted of another capital felony, and the murder was committed for pecuniary gain in a cold, calculated, and premeditated manner], a single mitigating circumstance [Beasley had been allowed to plead guilty to murder in the third degree, which carried a maximum sentence of three year's imprisonment], and imposed the death penalty.

*Anderson v. State*, 574 So. 2d 87, 89-90 (Fla. 1991) (footnotes omitted).

The Florida Supreme Court affirmed Petitioner's conviction and sentence on direct appeal. *Id.* at 95. In 1993, the Florida Supreme Court reversed the trial court's summary denial of Petitioner's motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and remanded for further proceedings.

3

*Anderson v. State*, 627 So. 2d 1170, 1170-71 (Fla. 1993). In 2002, the Florida

Supreme Court affirmed the trial court's denial of Petitioner's 3.850 motion.

*Anderson v. State*, 822 So. 2d 1261, 1269 (Fla. 2002). Petitioner timely filed his

§ 2254 petition in July 2003.

Petitioner asserted eight grounds for relief in his § 2254 petition. He seeks

a COA with respect to five of those: grounds one through four and ground seven.

He claims his constitutional rights were violated when: ground one—he was made

to stand trial on an indictment based on Beasley's perjured testimony; ground

two—the state post-conviction court failed to hold an evidentiary hearing on his

claim counsel was ineffective for failing to object to the penalty-phase jury

instructions; ground three—the state post-conviction court failed to hold an

evidentiary hearing on his claim counsel was ineffective for failing to state on the

record the mitigating evidence he was prepared to present; ground four—the state

post-conviction court failed to hold an evidentiary hearing on his claim that the

State failed to establish the corpus delicti of murder; and ground seven—the trial

court admitted a videotaped news broadcast showing Petitioner in prison garb in

the custody of prison officials. The district court denied grounds one and seven on

the merits and dismissed grounds two, three, and four for failing to present a

federal constitutional issue. We will discuss grounds one and seven first and then

4

address the remaining grounds.  But before we do that, we will set out the standard we apply in ruling on an application for a COA.

## II.  STANDARD FOR GRANTING A COA

A petitioner's right to appeal the denial of a § 2254 petition is governed by the COA requirements in § 2253(c):

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

To make a "substantial showing of the denial of a constitutional right," a petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 3394 n.4 (1983)).  Although a petitioner seeking a COA "must prove 'something more than the absence of frivolity' or the existence of mere 'good faith' on his or her part,"

5

we do not require the petitioner "to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus." *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S. Ct. 1029, 1040 (2003) (quoting *Estelle*, 463 U.S. at 893, 103 S. Ct. at 3394). "[A] COA does not require a showing that the appeal will succeed." *Id.* at 337, 123 S. Ct. at 1039. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338, 123 S. Ct. at 1040.

## III.  DISCUSSION

A.    *Ground One: Perjured Grand Jury Testimony*

The testimony Beasley gave at trial differed from what she told the grand jury and FDLE agents.  In all, Beasley gave three accounts of the murder:

> When she appeared before the grand jury on July 15, 1987, she minimized her role in the killing and said that Grantham had been killed outside of her presence.  She told the grand jury that Anderson and Grantham went for a ride while she remained in Anderson's apartment.  When Anderson returned alone, he had blood all over the front of his shirt and on his hands, and his eyes were wild.  She charged that Anderson admitted killing Grantham and threatened to kill her unless she helped him take Grantham's car to Tampa Airport.
>
> After testifying before the grand jury, Beasley told a different story to FDLE agents.  She told the agents on July 16 that Anderson walked into the apartment while Grantham was trying to rape her. Anderson pulled Grantham away, told her to get dressed, and forced

Grantham into the car at gunpoint. Beasley also stated that she told agents that she saw Anderson shoot Grantham four times.

On July 24, Beasley negotiated a plea to third-degree murder with a maximum sentence of three years. Beasley told the prosecutor that she was present when Anderson shot and killed Grantham in accordance with a prearranged plan. She told the same story at trial.

*Anderson*, 574 So. 2d at 90. Petitioner does not contend the State withheld from the defense the fact that Beasley lied to the grand jury. It is undisputed that the prosecutor told the defense of the perjury prior to trial and that Beasley told defense counsel, at her pre-trial deposition, that she lied to the grand jury. The trial court was also made aware of the perjury prior to trial as evidenced by the fact it made a transcript of Beasley's grand jury testimony available to the defense and the prosecutor and denied a motion to dismiss the indictment.

At trial, Beasley admitted that she lied to the grand jury and the FDLE agents. *Id.* She testified that she did not tell the grand jury the complete truth and that she lied to avoid admitting involvement in the murder. She stated that the story she told FDLE agents the day after her grand jury testimony was not true and that Petitioner had not found Grantham attempting to rape her on the night of the murder.

On direct appeal to the Florida Supreme Court, Petitioner argued his indictment should have been dismissed because the State knew about Beasley's

false testimony to the grand jury and did nothing to correct it. *Id.* at 90. The

Florida Supreme Court rejected this claim, stating:

> We agree with the authorities cited by Anderson that due process is violated if a prosecutor permits a defendant to be tried upon an indictment which he or she knows is based on perjured, material testimony without informing the court, opposing counsel, and the grand jury. This policy is predicated on the belief that deliberate deception of the court and the jury by the presentation of evidence known by the prosecutor to be false "involves[s] a corruption of the truth-seeking function of the trial process," *United States v. Agurs*, 427 U.S. 97, 104, 96 S. Ct. 2392, 2398, 49 L. Ed. 2d 342 (1976), and is "incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763, 765, 31 L. Ed. 2d 104 (1972) (citation omitted). Moreover, deliberate deception is inconsistent with any principle implicit in "any concept of ordered liberty." *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L. Ed. 2d 1217 (1959), and with the ethical obligation of the prosecutor to respect the independent status of the grand jury. *Standards For Criminal Justice* § 3-3.5, 3-48-4-49 (2d ed. 1980); *United States v. Hogan*, 712 F.2d 757, 759-60 (2d Cir. 1983); [*People v. Plechat*, 464 N.E.2d 447, 453 (1984)] (the "cardinal purpose" of the grand jury is to shield the defendant against prosecutorial excesses and the protection is destroyed if the prosecution may proceed upon an empty indictment).
>
> The Florida Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Art. I, § 9, Fla. Const. The state violates that section when it requires a person to stand trial and defend himself or herself against charges that it knows are based upon perjured, material evidence. Governmental misconduct that violates a defendant's due process rights under the Florida constitution requires dismissal of criminal charges. *State v. Glosson*, 462 So. 2d 1082, 1085 (Fla. 1985).

However, this principle is unavailing in Anderson's case because Beasley's grand jury testimony, although false in part, was not false in any material respect that would have affected the indictment. In every statement Beasley made, she consistently accused Anderson of the murder. Before the grand jury, she accused Anderson, but claimed he was alone when he murdered Grantham. At trial, she again accused Anderson, but switched her role in the murder from nonparticipant to unwilling, after-the-fact accomplice. Although Beasley's role changed, Anderson's did not. Here, we are not faced with subsequent testimony that can be said to remove the underpinnings of the indictment. On the contrary, Beasley's later testimony would have strengthened the probability of an indictment because she was an eyewitness to the murder. Thus, Beasley's perjurious grand jury testimony could have had no factual bearing on the grand jury's decision to indict Anderson for the murder. *Cf. Giglio*, 405 U.S. at 154, 92 S. Ct. at 766 ("'the false testimony could [not] . . . in any reasonable likelihood have affected the judgment of the [petit] jury,'") (quoting *Napue*, 360 U.S. at 271, 79 S. Ct. at 1178)). Nor are we faced with any deliberate subornation. This is not a case where the state knowingly presented false testimony to the grand jury.

*Id.* at 91-92.

In his post-conviction 3.850 motion, Petitioner claimed to have evidence the State knew or should have known Beasley would perjure herself before the grand jury. Following an evidentiary hearing, the post-conviction court concluded:

That at the time the witness testified before the Grand Jury her testimony as far as the Defendant's involvement was consistent. She was trying to minimize her involvement but her basic testimony concerning the actions of the Defendant were true.

9

> That the State Attorney in good faith believed the witness was going to testify truthfully and in good faith presented her testimony to the Grand Jury.

> . . . .

> There is absolutely no evidence or basis to believe the end result of an indictment and a conviction for first degree murder would have been different.

*Anderson*, 822 So. 2d at 1266 (quoting the trial court). The Florida Supreme Court concluded the 3.850 court's "findings that the State did not knowingly present the grand jury with perjured testimony are supported by competent substantial evidence." *Id.* Petitioner does not challenge these factual findings, and we take them as true. *See id.* § 2254(e)(1) (providing that state court factual findings are presumptively correct).

In his § 2254 petition, Petitioner challenges the Florida Supreme Court's conclusion that Beasley's perjured testimony was not material. The district court denied this claim on the merits, concluding Petitioner had not met his burden of showing the state courts' decisions were "contrary to" or "an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *See id.* § 2254(d)(1).

Jurists of reason would not debate the correctness of the district court's ruling. First, Petitioner has not cited a decision of the Supreme Court, and we

10

have not found one, which clearly establishes the contours of the constitutional right he claims was violated. The Supreme Court has not announced a constitutional rule governing what a state prosecutor must do in the event he learns, prior to trial, that a grand jury witness testified falsely. Supreme Court decisions in the line of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), clearly establish that the prosecution may not suppress favorable and material evidence from the defense irrespective of the good faith or bad faith of the prosecution. *See also Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555 (1995); *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375 (1985); *United States v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392 (1976); *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 (1972). And, "[a]s long ago as *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S. Ct. 340, 342, 79 L. Ed. 791 (1935), [the Supreme Court] made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio*, 405 U.S. at 153, 92 S. Ct. at 766; *see also Pyle v. Kansas*, 317 U.S. 213, 63 S. Ct. 177 (1942); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959) ("The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."). Although these constitutional principles are

11

well-established, they pertain to the prosecution's suppression of evidence, or presentation of false evidence, *at trial*.

The extension of these principles from the trial setting to the grand jury setting, however, is far from clear. In *Bracy v. United States*, for example, Justice Rehnquist denied an application to stay a judgment pending disposition of the petition for certiorari in a case where the applicants' chief contention was that their indictment should have been dismissed because a witness committed perjury before the grand jury. 435 U.S. 1301, 1301, 98 S. Ct. 1171, 1172 (1978). The applicants relied on cases such as *Mooney*, *Giglio*, and *Napue* in support of their contention that the prosecutor owes a duty to correct testimony introduced in grand jury proceedings which is later shown to be false. *Id.* at 1302, 98 S. Ct. at 1172. Justice Rehnquist denied the application, stating:

> Because it seems to me that applicants misconceive the function of the grand jury in our system of criminal justice, I cannot conclude that four Justices of this Court are likely to vote to grant their petition. The grand jury does not sit to determine the truth of the charges brought against a defendant, but only to determine whether there is probable cause to believe them true, so as to require him to stand his trial. Because of this limited function, we have held that an indictment is not invalidated by the grand jury's consideration of hearsay, *Costello v. United States*, 350 U.S. 359, 76 S. Ct. 406, 100 L. Ed. 397 (1956), or by the introduction of evidence obtained in violation of the Fourth Amendment, *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). While the presentation of inadmissible evidence at trial may pose a substantial

12

threat to the integrity of that factfinding process, its introduction before the grand jury poses no such threat. I have no reason to believe this Court will not continue to abide by the language of Mr. Justice Black in *Costello, supra*, 350 U.S. at 363, 76 S. Ct. at 409: "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

*Bracy*, 435 U.S. at 1302-03, 98 S. Ct. at 1172. As predicted, the Court denied the petition for certiorari. *Bracy v. United States*, 439 U.S. 818, 99 S. Ct. 79 (1978). If anything, Justice Rehnquist's comments in *Bracy* seem to suggest Supreme Court precedent would support a holding that an indictment is not invalidated by the grand jury's consideration of perjured testimony.

It is also unclear what role the petit jury's finding of guilt beyond a reasonable doubt would play in this situation. There is no Supreme Court precedent clearly establishing a constitutional rule that, irrespective of prosecutorial misconduct, an indictment must be dismissed because of perjured grand jury testimony where the perjurious testimony is not repeated before the petit jury which convicts. In *United States v. Mechanik*, the Supreme Court considered a case where the Fourth Circuit held that portions of a jury verdict had to be set aside because of a violation of Federal Rule of Criminal Procedure 6(d), which specified who could be present during a grand jury proceeding. 475 U.S.

13

66, 67, 106 S. Ct. 938, 940 (1986). The Supreme Court reversed and held that any violation of the rule was harmless beyond a reasonable doubt because "the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." *Id.* at 70, 106 S. Ct. at 941-42. The Court, however, left open the possibility that some irregularities in the grand jury proceeding, such as racial discrimination in the selection of grand jurors, might not be harmless. *Id.* at 70 n.1, 106 S. Ct. 942 n.1 (citing *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617 (1986)). Although *Mechanik* does not squarely address the situation presented in this case, it arguably favors a holding that the petit jury's conviction of Petitioner renders harmless Beasley's perjured grand jury testimony.

As the foregoing shows, Federal law, as determined by the Supreme Court, is not clearly established with respect to Petitioner's claim. Although the Florida Supreme Court recognized a constitutional rule that "due process is violated if a prosecutor permits a defendant to be tried upon an indictment which he or she knows is based on perjured, material testimony without informing the court, opposing counsel, and the grand jury," it concluded Petitioner's due process rights had not been violated because Beasley's false testimony was not material to the grand jury's decision. *Anderson*, 574 So. 2d at 91-92. Were we to somehow

14

disagree with that conclusion, we could not say the Florida Supreme Court's decision was "contrary to" or "an unreasonable application of . . . *clearly established* Federal law, as determined by the Supreme Court of the United States." *See* § 2254(d)(1) (emphasis added). The requirements of § 2254(d)(1), codifying *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989), and respect for the finality of state criminal judgments preclude us from creating new constitutional rules of criminal procedure on collateral review. *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) (citing *Teague*, 489 U.S. at 310, 109 S. Ct. at 1074; *Lockhart v. Fretwell*, 506 U.S. 364, 372-73, 113 S. Ct. 838, 844 (1993)).

Second, even ignoring the lack of clearly established law, jurists of reason would not debate the reasonableness of the Florida Supreme Court's determination that Beasley's false testimony was not material, i.e., would not have affected the grand jury's decision to indict. The petit jury heard all of Beasley's stories and her admission that she lied to the grand jury and FDLE agents and found Petitioner guilty of first degree murder beyond a reasonable doubt. In light of the conviction, no reasonable jurist would debate whether the grand jury would have indicted Petitioner for first degree murder. *See United States v. Mangual-Corchado*, 139 F.3d 34, 42 (1st Cir. 1998) ("As the trial jury found guilt beyond a reasonable doubt, we are not persuaded that a similarly informed grand jury would not have

15

found probable cause."); *Talamante v. Romero*, 620 F.2d 784, 791 (10th Cir. 1980) (finding perjured grand jury testimony immaterial where "[e]ven if the perjured testimony had been brought to the attention of the grand jury, it seems highly unlikely, in view of the petit jury's later finding of guilt after a full trial, that the grand jury would have failed to indict based on probable cause"). Petitioner is, therefore, not entitled to a COA with respect to this claim.

B.      *Ground Seven: Videotape Showing Petitioner in Prison Clothing*

Petitioner claims the trial court violated his due process rights by allowing the jury to view a videotape of a news broadcast about Petitioner's case in which Petitioner was shown in prison garb in the custody of prison authorities. The tape was introduced during the testimony of Petitioner's cell mate, Kenneth Gallon, who testified about Petitioner's reaction when he saw the broadcast while in jail. Gallon testified that when Petitioner saw the broadcast, which featured Beasley and depicted investigators searching for the body, he mimicked shooting Beasley and telling investigators to stay away from a certain area.

The Florida Supreme Court addressed this claim on direct appeal:

> We also reject Anderson's contention that he was denied a fair trial because the videotaped news report of Grantham's murder investigation viewed by the jury depicted Anderson in jail clothes. The videotape, one and one-half minutes in length, showed a single, brief glimpse of Anderson wearing prison garb. Under the

16

circumstances, there was no "constant reminder of the accused's condition," *Estelle v. Williams*, 425 U.S. 501, 504, 96 S. Ct. 1691, 1693, 48 L. Ed. 2d 126 (1976), to support the conclusion that Anderson was denied a fair trial.

*Anderson*, 574 So. 2d at 93-94. The district court concluded the Florida Supreme Court's denial of relief as to this claim was not "contrary to" or "an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *See id.* § 2254(d)(1).

Jurists of reason would not debate the correctness of the district court's conclusion. In *Estelle*, the Supreme Court held that a defendant's presumption of innocence is undermined and his right to a fair trial violated when the state compels him to stand trial in prison or jail clothing. 425 U.S. at 504-06, 512, 96 S. Ct. at 1692-94, 1697; *see also United States v. Harris*, 703 F.2d 508, 509-11 (11th Cir. 1983) (holding a defendant's due process rights were violated where he was compelled to wear prison clothing during jury voir dire). As we explained in *United States v. Villabona-Garnica*, "the Supreme Court emphasized that the prison clothing was a 'constant reminder of the accused's condition,' 'a continuing influence throughout the trial' that presented an 'unacceptable risk' of 'impermissible factors coming into play' and corrupting a juror's judgment." 63 F.3d 1051, 1058 (11th Cir. 1995) (quoting *Estelle*, 425 U.S. at 504-05, 96 S. Ct. at

17

1693).  The finding that the videotape contained only a "single, brief glimpse" of Petitioner in prison garb is presumptively correct.  *See id.* § 2254(e)(1).  Jurists of reason would not debate whether Petitioner's right to a fair trial was violated by the "single, brief glimpse" of Petitioner on video in prison garb.  Not only was the image too brief, but it was also cumulative: the jury already knew Petitioner was incarcerated at the time of the news report because his cell mate testified to that effect.  Petitioner is, therefore, not entitled to a COA with respect to this claim.

C.      *Ground Two: The State Post-Conviction Court Failed to Hold an Evidentiary Hearing on the Issue of Ineffective Assistance of Counsel During the Penalty Phase*

At the penalty phase, counsel informed the court that Petitioner did not wish to present any witnesses in mitigation.  The following exchange occurred between counsel, Petitioner, and the court:

THE COURT:  Defense ready to proceed?

MR. OBER:  Judge, before we do, and before the jury's brought back in, I would like to put a few matters on the record with Mr. Anderson, and I would request that he be allowed to approach this bench so we can communicate with the Court.

THE COURT:  Yes.

MR. OBER:  Judge, at this time, I would announce to the Court and certainly allow the Court, for the limited purpose of this inquiry to address Mr. Anderson, but based on my involvement in this case and also with the assistance of Mr. Ashwell, we have uncovered many

18

witnesses that I feel could testify in Mr. Anderson's behalf, favorably to him, during the second phase. And I would cite the names of those individuals which we have found. That would be Dr. Robert M. Berland; Williams Anderson, who is Mr. Anderson's father; Helen Anderson, his mother; David Anderson, his brother; Vickie Barber, his sister; Griffin Simmons, a sister of his; also a Joyce Wilson, a witness; and his son, Kyle Anderson. In addition to that, we have gone to the correctional institute of individuals that—of individuals in the system who know Mr. Anderson based on his past incarceration, one Chaplain William Hanawalt, Major Sammy Hill, who is a correctional officer at Zephyrhills Correctional Institute and Superintendent Ray Henderson at the Department of Corrections in Lauderhill, Florida. Additionally, there are other witnesses including employers and employees of Mr. Anderson, his friends, including Kay Bennet, who I believe could lend some assistance to Mr. Anderson during this portion of the proceeding.

After very great detail with him in the presence of Mr. Fuente, Mr. Ashwell, myself, and Mr. Anderson, over the portion of time that I've been involved in this, he has never wavered in his desire not to have any of these people testify during the course of this second phase proceeding. I have told him that I believe it to be in his best interest, and I'm announcing that for the record. And he has commanded me not to call these individuals because that is his desire.

THE COURT: You wish to question Mr. Anderson concerning what you just said Mr. Ober?

MR. OBER: Mr. Anderson, you heard my statement to Judge Graybill. Is there anything that you would like to add to that? Do you concur in the statements I made or do you disagree with them, or do you, at this time, want any individuals, those I mentioned or anyone else that, perhaps, we hadn't discussed, who will assist you in this second phase proceeding?

ANDERSON: I concur with the statements you made.

19

MR. OBER:  And—

ANDERSON:  I would rather not have any witnesses testify on my behalf that you mentioned or that could, in fact, be called.

THE COURT:  Mr. Anderson, are you on any kind of drugs or medication that would affect your ability to understand what's going on today?

ANDERSON:  No, sir, not at all.

THE COURT:  All right.  Mr. Ober, you put it in the record.  Mr. Anderson has responded.

*Anderson*, 822 So. 2d at 1267-68.

Petitioner makes several arguments centering on the fact counsel did not state on the record what each penalty phase witness would have testified to had he or she been called.  A fair reading of the petition shows he asserts that (1) the post-conviction court should have held a hearing on this claim, (2) counsel was ineffective for failing to make a complete record regarding mitigation witness testimony, and (3) he could not have made a knowing and intelligent waiver of the right to present mitigating evidence because counsel did not present on the record what the mitigating evidence would have been.  The district court focused on the first of these arguments and dismissed the claim for failing to state a ground for federal habeas relief.

20

It is beyond debate that Petitioner is not entitled to relief on these grounds. We have held the state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief. *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987). Therefore, insofar as Petitioner's claim is based on the state court's failure to hold an evidentiary hearing, jurists of reason would not debate whether the district court properly dismissed this claim.

Moreover, the requirement that counsel state on the record what the mitigating evidence would be is solely a requirement of state law. In *Koon v. Dugger*, the Florida Supreme Court rejected a claim that counsel was unconstitutionally deficient for failing to present evidence in mitigation, concluding the defendant had instructed his counsel not to present such evidence. 619 So. 2d 246, 249-50 (Fla. 1993). Out of concern "with the problems inherent in a trial record that does not adequately reflect a defendant's waiver of his right to present any mitigating evidence," however, the Florida Supreme Court announced the procedure to be followed when a defendant waives the presentation of mitigating evidence:

> [C]ounsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented *and what that evidence would be.* The court should then require the defendant to confirm on the record that his counsel has

discussed these matters with him, and despite counsel's
recommendation, he wishes to waive presentation of penalty phase
evidence.

*Id.* at 250 (emphasis added).  Although *Koon* requires counsel to state on the

record what the evidence in mitigation would be before a defendant can waive his

right to present mitigating evidence, "[a] state's interpretation of its own laws or

rules provides no basis for federal habeas corpus relief, since no question of a

constitutional nature is involved."  *McCullough v. Singletary*, 967 F.2d 530, 535

(11th Cir. 1992).[1]  Rather, Petitioner must point to a Supreme Court decision to

support his argument, and he has failed to do so.  Petitioner is, therefore, not

entitled to a COA with respect to this claim.

D.      *Grounds III & IV: The State Post-Conviction Court Failed to Hold
        Evidentiary Hearings*

In grounds three and four, respectively, Petitioner claims the state post-

conviction court violated his constitutional rights by failing to conduct an

evidentiary hearing with respect to the State's failure to establish the corpus delicti

of murder and with respect to ineffective assistance of counsel for failure to object

---

[1]Moreover, the Florida Supreme Court addressed the claim counsel was ineffective for
failing to state on the record what the evidence in mitigation would be and found it to be without
merit.  *Anderson*, 822 So. 2d at 1268.  The Court explained the rule announced in *Koon* was
prospective, and, therefore, counsel could not be deficient for failing to foresee it.  *Id.*  The Court
also noted that "counsel did proffer the witnesses that he believed could have benefitted
Anderson, and the trial court did engage in an on-the-record colloquy."  *Id.*

to the penalty phase jury instructions. The district court dismissed these claims because the failure of a state post-conviction court to conduct an evidentiary hearing is not a ground for federal habeas relief. *See Spradley*, 825 F.2d at 1568.

The district court's ruling is not debatable among jurists of reason. Moreover, Petitioner's application for a COA merely states: "Petitioner incorporates and relies on all previously made arguments in support of this claim." We have rejected the practice of incorporating by reference arguments made to the district courts. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452-53 (6th Cir. 2003)). Petitioner is, therefore, not entitled to a COA with respect to these claims.

## IV. CONCLUSION

Petitioner has failed to make a "substantial showing of the denial of a constitutional right." *See id.* § 2253(c). Accordingly, his application for a COA is DENIED.

23