[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-14499

_____

D. C. Docket No. 04-00249-CR-CAP-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY C. KAPORDELIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 1, 2009)

Before TJOFLAT and CARNES, Circuit Judges, and HOOD,* District Judge.

---

* Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

HOOD, District Judge:

At the time of his arrest in 2004, Defendant-Appellant Gregory C. Kapordelis ("Defendant" or "Kapordelis") was an anesthesiologist who practiced medicine and had a home in Gainesville, Georgia. His sexual exploits with underage boys, however, took him far from Gainesville, across state lines and around the world. Evidence of his globe-spanning exploits, including the sexually explicit photographs of boys that Defendant made as souvenirs during his travels, and Kapordelis's large collection of child pornography collected from other sources ultimately led to Defendant's indictment and conviction for producing, receiving, and possessing child pornography in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), and 2252A(a)(5)(B). Defendant appeals his conviction and his 420-month sentence.

Defendant argues that the district court erred by: (1) denying his motion to dismiss Counts 1 and 3 of the Fourth Superseding Indictment; (2) denying his request for a *Franks* hearing and his motion to suppress evidence obtained under certain search warrants; (3) admitting testimony concerning his solicitation of sex from boys, under the age of eighteen, while in the Czech Republic under Federal Rule of Evidence 404(b); (4) applying the 2003 United States Sentencing Guidelines (hereinafter, "Guidelines") instead of the 2002 Guidelines in imposing

a sentence; (5) finding that one of his victims was vulnerable, pursuant to U.S.S.G. § 3A1.1; (6) double counting the number of images of child pornography that he possessed because the district court imposed both a 2-level enhancement for the number of images that he possessed, pursuant to U.S.S.G. § 2G2.4(b)(2), and a 5-level enhancement for having more than 600 images, pursuant to § 2G2.4(b)(5)(D); (4) impermissibly granting an upward departure; (7) accepting a written victim impact statement during sentencing; and (8) imposing an unreasonable sentence.[1]

We address each of these issues in turn and, ultimately, affirm Kapordelis's conviction and the sentence imposed by the district court.

## I.   Factual and Procedural Background

In June 2001, Kapordelis traveled to Greece with his cousin, who was then eleven-years-old. While in Greece, Defendant exposed and took photographs of the boy's genitalia and anus.[2]

In January 2002, Kapordelis met Lawrence Walker when the then fourteen-year-old had surgery and was treated by Defendant. Kapordelis later hired Walker to do chores on the weekends, and, in May of 2002, Kapordelis invited Walker on a trip to Kapordelis's condominium in Kure Beach, North Carolina. The night

---

[1]  In subsequent editions of the Sentencing Guidelines, § 2G2.4 was deleted by consolidation with § 2G2.2, effective November 1, 2004.

[2]  These images are the subject of Count 1 of the Fourth Superseding Indictment, which was in place at the time of Kapordelis's trial.

before they flew to North Carolina from Atlanta, Georgia, Kapordelis and Walker

spent the night in a hotel near the airport, and Kapordelis made Walker several

mixed drinks containing alcohol. Walker had no recollection of what happened

after he started drinking, including anyone taking pictures of him standing in front

of a mirror even though such pictures were later shown to him by Kapordelis.

During this trip, as the boy lay nonresponsive on a bed, Defendant exposed the

boy's genitalia and photographed them with a Sony Cybershot camera

manufactured outside the State of Georgia.[3]

In July 2002, Kapordelis and Walker traveled together again, this time to

Myrtle Beach, South Carolina, where they shared a room in a condominium

occupied by Defendant's friend. During their stay, Defendant again exposed and

photographed the boy's genitalia, although Walker did not remember anyone

taking his photograph.[4] The sexually explicit photographs of Walker were found

on a computer seized from Defendant's home in Georgia.

In 2004, Kapordelis traveled to St. Petersburg, Russia. During his stay

abroad, in late March 2004, the Immigration and Customs Enforcement ("ICE")

office in Atlanta was informed by the ICE attaché in Moscow that three minors had

---

[3] These images are the subject of Count 2 of the Fourth Superseding Indictment.

[4] These images are the subject of Count 3 of the Fourth Superseding Indictment.

complained to Russian authorities that they were molested by Kapordelis and that he took digital videos and pictures of his victims. According to reports from Russian law enforcement, several of the juvenile victims claimed that Defendant had given them pills that made them drowsy or unconscious.

Relying on this information, on April 12, 2004, an ICE agent sought a criminal complaint and express warrant, charging Defendant with traveling in foreign commerce for the purpose of having sex with a minor in violation of 18 U.S.C. § 2423, i.e., "sex tourism." That same day, Defendant returned to the United States. Alerted to the investigation into Defendant's activities but not yet armed with an arrest warrant, ICE agents at New York's John F. Kennedy International airport approached Defendant upon his arrival and asked to speak with him. During that interview, they received word from ICE-Atlanta that the magistrate judge had signed the complaint and issued the warrant. At that time, the New York ICE agents took Defendant into custody, seizing a laptop computer, several digital cameras, and an external hard drive from him which were transferred to ICE Agent Cory E. Brant in Atlanta.

Meanwhile, Agent Brant had also prepared and submitted applications for search warrants for Defendant's home and place of work, seeking court authority to look for evidence of sex tourism and child pornography in both locations,

including on computers and other digital storage devices. The affidavit, used to obtain both warrants, was based exclusively on information from two reports from the ICE-Moscow office, interviews with Defendant's two co-workers, notes from telephone conversations with the ICE attaché, and various database checks as to utility service and addresses. On the evening of April 12, 2004, a federal magistrate judge signed both warrants.

During the search of Defendant's home, agents seized (1) a Hewlett-Packard desktop computer from the master bedroom, (2) a Sony Vaio laptop computer with a broken screen from inside a locked closet in the master bathroom, (3) a box imprinted with the name "Rohypnol," on the master bedroom floor, (4) a box that contained Versed, and (5) a Sony Vaio desktop computer in the living room.[5] Forensic examination of one of the desktop computers showed that it contained thousands of images and videos of child pornography downloaded by Defendant.[6] On the laptop computer with a broken screen, a forensic examiner found a second, larger cache of child pornography, including sexually explicit images of

---

[5] Randell Alexander, a pediatrician, testified at trial that Versed is a relaxant that, depending on the dose, can either make a person sleepy or unconscious. Rohypnol, which commonly is called a date rape drug, causes people to become semi-conscious and not to remember what happened while they are under the influence of the drug. Alexander testified that it is not appropriate to have either Versed or Rohypnol in an individual's home, as they have no home use.

[6] The images found on this computer are the subject of Count 5 of the Fourth Superseding Indictment.

Defendant's eleven-year-old cousin and the fourteen-year-old former patient.[7]

Additionally, the laptop computer seized from Defendant at the airport in New York was found to contain pornographic images of children.[8]

Defendant was initially indicted in May 2004 on two counts of engaging in sex tourism in violation of 18 U.S.C. § 2423(c). As additional evidence was gathered and pre-trial motions were litigated, several superseding indictments were issued. In each instance, Defendant pleaded not guilty. The Fourth Superseding Indictment, in place at the time of trial, charged Defendant with (1) producing child pornography photographs, in violation of 18 U.S.C. § 2251(a), on or about June 28, 2001 ("Count 1"); (2) producing child pornography photographs, in violation of § 2251(a), on or about May 18, 2002 ("Count 2"); (3) producing child pornography photographs, in violation of § 2251(a), on or about July 2, 2002 ("Count 3"); (4) producing a child pornography video, in violation of § 2251(a), on or about December 12, 2001 ("Count 4"); (5) receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), on a Hewlett-Packard desktop computer between March 2002 and April 2004 ("Count 5"); (6) receiving child pornography, in violation of § 2252A(a)(2)(A), on a Sony Vaio laptop computer between April

---

[7] The images found on this computer are the subject of Counts 1-3 and 6 of the Fourth Superseding Indictment.

[8] The images found on this computer are the subject of Count 7 of the Fourth Superseding Indictment.

and December 2002 ("Count 6"); and (7) possessing child pornography, in violation of § 2252A(a)(5)(B), on April 12, 2004 ("Count 7").

Through the course of the proceedings, the parties engaged in substantial motion practice. The earliest of these motions relevant to our inquiry was Defendant's January 28, 2005, motion to suppress the evidence seized from his home, his workplace, his person, and his on-line account as the result of search warrants issued and executed in April 2004, May 2004, and August 2004. In July 2005, at Defendant's request, the magistrate judge held a *Franks* hearing in order to explore Defendant's allegations about inaccuracies and omissions in the search warrant affidavit. At that hearing, Defendant sought to present evidence about alleged misrepresentations and omissions concerning the investigation in both Russia and the United States, but the trial court limited the focus of the hearing to events taking place in the United States. With regard to the alleged misrepresentations and omissions related to the investigation and information received from authorities in Russia, the magistrate judge concluded that no hearing was necessary as the affidavit, after accounting for Defendant's objections, nevertheless provided probable cause for the searches. After receiving the evidence presented at the hearing and following extensive briefing, the district court concluded that no *Franks* violation had occurred and that the affidavits

8

provided sufficient probable cause to support the authorizing magistrate's decision to issue the warrant.

Defendant filed a motion in limine requesting, among other things, the exclusion of the testimony of Christopher Williams and Lester Andrews concerning Kapordelis's travels to Prague, Czech Republic, which was to be offered by the United States under Federal Rule of Evidence 404(b). That motion was denied by the district court on June 7, 2006. Additionally, Defendant filed a Motion to Dismiss Counts of the Fourth Superseding Indictment on November 20, 2006, which was denied by the district court on March 19, 2007.

Defendant's trial began on May 7, 2007. In addition to evidence of his travels with his young cousin and Walker, recounted briefly above, the prosecution presented evidence of the contents of Defendant's computer harddrives. James Fottrell, assistant to the chief for computer forensics and investigations in the Department of Justice's Criminal Division's Child Exploitation and Obscenity Section, testified that he found approximately 1,400 images and over 100 videos that he classified as child pornography on the desktop computer found in Kapordelis's home. Fottrell found over 9,000 images and 300 videos that he classified as child pornography on the laptop found in the locked closet of Kapordelis's bedroom, which he believed was last used in February 2003, as well

9

as internet searches for the age of consent laws in Croatia, Peru, Singapore, and Spain. Fottrell also found 180 images of child pornography on the laptop computer seized from Kapordelis at the airport in New York.

On all three computers seized from Defendant, Fottrell found a text file in which Kapordelis appears to memorialize some of his travels to Prague and wrote about his experience with an 18-year-old named Patrick and how he hoped to meet a 17-year-old boy named Lucas the following night. In another text file, Kapordelis described how he spent three days in Prague with a 16-year-old boy named Peter having oral and anal sex. In yet another text file, Kapordelis wrote more introspectively about his sexual interest in boys: "Why am I attracted to young guys? Why does my relationship have to be a controlling one? Why is it difficult for me to enjoy a young guy sexually unless I am in total control?"

Over Defendant's objection, the United States also presented evidence regarding Defendant's periodic travel to Prague, Czech Republic, to engage the services of young male prostitutes.[9] Christopher Williams testified that Kapordelis told Williams that the reason that Kapordelis went to Prague was to have sex with

---

[9] Defendant renewed his objection to this testimony, raised earlier in his motion in limine, during the trial. The Court overruled his objection, concluding that the testimony was admissible as evidence of similar acts which demonstrated identity of action, intent to commit the crime charged, and absence of accident or mistake. Having found the evidence to be presented to be relevant to something other than defendant's character, the Court also concluded that the probative value of the evidence was not outweighed by its potentially prejudicial nature.

young men, and the first time that Williams visited Kapordelis in Prague, Kapordelis brought 2 young men, who were 17 or 18 years old, back to the hotel room, where Williams saw Kapordelis give them money. On Williams's second trip to Prague, Kapordelis took Williams to a mall, where Kapordelis liked to find young men, and to a bar, where people went to pick up young male prostitutes. At the bar, Williams observed Kapordelis appear to negotiate with a pimp for a "kid," whom Kapordelis took back to Kapordelis's apartment. Kapordelis later informed Williams that the person was 14 years old.

Lester Andrews testified that Kapordelis had stated that he was interested in, and fantasized about, young boys. Kapordelis told Andrews that he liked having sex with young boys in Prague, where it was legal, and, when Andrews visited Kapordelis in Prague, he took Andrews to the same bar where Kapordelis had taken Williams. Andrews observed Kapordelis putting large sums of money in front of a boy until the boy agreed to leave with him.[10]

Additionally, Deno Contos, Kapordelis's second cousin, testified that, at the age of sixteen, he moved in with Kapordelis. Kapordelis was then in medical

---

[10] These trysts were not Kapordelis's only connection to the Czech Republic. Eva Racanska, an obstetrician in the Czech Republic, who was by all accounts in St. Petersburg with Kapordelis just prior to his April 2004 arrest, testified that she brought Kapordelis one package of Rohypnol from the Czech Republic, where it is a legally prescribed drug, during one of her trips to the United States. Apparently, Racanska knew Kapordelis well and identified Kapordelis's hand as the one pulling down his young cousin's pants in one of the sexually explicit photographs found on Kapordelis's computer.

11

school and provided Contos with alcohol and pills. Contos eventually discovered a video of Kapordelis having sex with him although he had no memory of the video being made. The video cassette bore a sticker that stated, in Kapordelis's handwriting, to destroy it if he died. Contos observed five or six other videos that had the same instruction to destroy if Kapordelis died. Contos moved back home when Kapordelis graduated from medical school, although, as Contos was nearing his eighteenth birthday, he moved back in with Kapordelis, who resumed drugging and molesting him. Contos also testified that, years later, in April 2004, he received a frantic telephone call from Kapordelis, who gave Contos the security codes that would permit him to enter Defendant's home and a locked bedroom closet. Kapordelis asked Contos to destroy Kapordelis's homemade videos. Contos refused to destroy them, but agreed to hide them. Contos did not tell anyone about the videotape of himself until Kapordelis was arrested, some 20 years after he discovered it.

Defendant's three week trial concluded on May 24, 2007, when a jury found him guilty on Counts 1-3 and 5-7. Kapordelis was acquitted of the allegations in Count 4.

Following Defendant's conviction, a Presentence Investigative Report (hereinafter, "PSR") was prepared for the trial court. The PSR assigned Kapordelis

an offense level of 37 for Count 1, which included a 2-level enhancement for a vulnerable victim, pursuant to U.S.S.G. § 3A1.1, and a 2-level enhancement for use of a special skill, pursuant to U.S.S.G. § 3B1.3. The PSR grouped Counts 5 through 7, and calculated the offense level as 30, which included a 2-level enhancement for possession of 10 or more films containing child pornography, pursuant to U.S.S.G. § 2G2.4(b)(2), and a 5-level enhancement for possessing over 600 images of child pornography, pursuant to § 2G2.4(b)(5)(D). The PSR ultimately assigned Kapordelis a combined total offense level of 41, which included a 4-level multiple count adjustment, with a criminal history category of I, and a recommended Guidelines range of 324-405 months' imprisonment.

Defendant lodged extensive objections to the PSR, challenging the facts listed in nearly every paragraph of the portion of the PSR dedicated to offense conduct, objecting to the use of the 2003 edition of the Guidelines to prepare the PSR instead of the 2002 edition, and challenged the Guidelines calculations themselves. Defendant lodged objections to the application of the vulnerable victim enhancement under § 3A1.1 for each of the production counts. Defendant also asked the trial court to reject the PSR's recommendation that he be assessed two levels for possessing ten or more items containing child pornography under § 2G2.4(b)(2) and five levels for possessing 600 or more images of child

13

pornography under § 2G2.4(b)(5)(D).

Ultimately, the district court overruled Kapordelis's objections to the PSR, determining that the PSR properly relied upon the 2003 edition of the Guidelines and that it was proper to apply both the enhancements under § 2G2.4(b)(2) and § 2G2.4(b)(5)(D). The district court determined Defendant's final offense level to be 39, with a Criminal History Category of 1. As a result, Defendant's Guidelines range was 262-327 months.

The United States, however, filed a motion for an upward departure or variance in which it argued that, under 18 U.S.C. § 3553(a), the court should sentence Kapordelis to life imprisonment based on the specifics of his actions, his history of abuse, and his lack of remorse. Naturally, Kapordelis proposed that the district court sentence him below the recommended guideline range. During a two-day sentencing hearing, the district court heard and considered testimony from some of Kapordelis's friends and family, who testified variously that Defendant was a man of character who would help anyone; supportive; trustworthy with children; the architect of a fine anesthesia practice; a pillar of his family, who went beyond what a normal family member does to make others feel loved and comforted; a loving, good person who did many good deeds for his family and others throughout the world; a great example who provided encouragement;

14

charitable; generous with his time and money; someone who shared his life with everyone and took every opportunity with the witness' children to teach them something; and was someone who would benefit society in the future.

The district court also heard testimony from Fottrell and Kapordelis's brother-in-law concerning used computers provided by Kapordelis to family members which contained images of child pornography. Fottrell testified that, on one of these old computers, he found a total of 33 hours worth of pornographic videos, and each video contained approximately 24 frames per second. Fottrell also identified, on another old computer given to Contos, child pornography news group activity associated with Microsoft's Outlook Express and a user identity, the "authentication identity," which was password protected.[11] Fottrell was also able to determine that 8,000 of the files on Kapordelis's computers were gathered by news groups and uploaded at a very high rate per second.

Kapordelis was hardly penitent during the sentencing proceeding. During his allocution, he accused the United States of falsely accusing him of molesting

---

[11] News groups allow people to communicate over the internet, and once a person signs up for a news group, articles and images related to the subject matter of the group are sent to the person's computer. Under the authentication identity, Fottrell found subscriptions to the following news groups: (1) alt.binaries.pictures boys; (2) alt.binaries.pictures boys bondage; (3) alt.binaries.pictures.erotica child male; (4) alt.binaries.pictures.erotica teen male anal; (5) alt.binaries.pictures.erotica teen male masturbation; (6) alt.binaries.pictures.sunshine boys; (7) alt.binaries.pictures.youth wrestling; (8) alt.binaries.pictures asparagus; (9) alt.fan.John; (10) alt.fan.prettyboy; and (11) alt.svenshouse. Fottrell testified that, in his experience investigating child pornography, asparagus was a euphemism for a boy's penis.

15

children in Russia and maintained that the Assistant U.S. Attorneys ("AUSAs") who prosecuted the case were liars. He called the prosecution arrogant and complained that the AUSA had taken on the persona of a dictator, comparing the AUSA to Hitler. While Kapordelis apologized to anyone affected by his actions, he stressed that he was not referring to sexual molestation victims, as he insisted that he had never sexually molested anyone.

In announcing the sentence, the district court acknowledged the advisory nature of the Guidelines and, citing *United States v. Booker*, 543 U.S. 220 (2005), stated that it would consider the factors set forth in 18 U.S.C. § 3553(a). The judge then stated that he would "grant the government's motion for an upward departure on the grounds of the number of images, the long history of the abuse of the defendant," as well as the court's concerns about parity, citing cases in the ten years previous in which the sentencing judge had sentenced defendants to ten years incarceration simply for crossing state lines on one occasion to have "sexual adventures with children." The judge also considered the need for the "defendant's incapacitation" and found that a greater sentence than available under the Guidelines was necessary because Kapordelis's "history of predatory behavior show[ed] there is little chance for rehabilitation".

Finally, on September 18, 2007, the district court sentenced Defendant to a

total term of 420 months: 240 months for each production count, to run concurrently; 180 months for each receipt count, to run concurrently with each other but consecutively to the production counts; and 120 months for the possession count, to run concurrently with the receipt counts.

## II. Discussion

### A. Motion to Dismiss Indictment

Defendant was charged in Counts 1 and 3 of the Fourth Superseding Indictment with violating 18 U.S.C. § 2251(a). As effective from October 30, 1998, to April 29, 2003, 18 U.S.C. § 2251(a) provided that:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, . . . or who transports any minor in interstate or foreign commerce . . . with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

Count 1 of the Fourth Superseding Indictment alleged that:

> On or about June 28, 2001, the defendant, GREGORY C. KAPORDELIS, did use a person under the age of eighteen to engage in sexually explicit conduct,

17

specifically, the lascivious exhibition of the genitals and the pubic area of said minor, for the purpose of producing visual depictions of such conduct, specifically digital photographs, such visual depictions have been transported from Greece to Georgia, specifically, the Northern District of Georgia, all in violation of Title 18, United States Code, Section 2251(a).

Count 3 alleged that:

On or about July 5, 2002, the defendant, GREGORY C. KAPORDELIS, did use a person under the age of eighteen to engage in sexually explicit conduct, specifically, the lascivious exhibition of the genitals and the pubic area of said minor, for the purpose of producing visual depictions of such conduct, specifically digital photographs, by means of a Sony camera, said camera having been mailed, transported and shipped in interstate and foreign commerce, and said visual depictions having been transported from South Carolina to Georgia, specifically, the Northern District of Georgia, all in violation of Title 18, United States Code, Section 2251(a).

Defendant argues that the district court erred when it denied his motion to dismiss Count 1 because 18 U.S.C. § 2251 does not authorize prosecution of conduct by an American national that occurred wholly in a foreign country. He next argues that the district court should have dismissed Counts 1 and 3 because venue in the Northern District of Georgia was improper as the conduct specifically outlawed by 18 U.S.C. § 2251(a), the "use" of a minor in and the production of images of sexually explicit conduct, was alleged to have occurred in either Greece

18

or South Carolina.[12]

Denials of motions to dismiss concerning questions of law are reviewed *de novo*. *United States v. Gupta*, 463 F.3d 1182, 1191 (11th Cir. 2006). Having considered the law and the arguments, we affirm the decision of the district court for the reasons which follow.

### 1.    Application of 18 U.S.C. § 2251 to Extraterritorial Acts

Defendant argues that 18 U.S.C. § 2251(a) does not authorize prosecution for prohibited acts by an American national that occur in a foreign country, such as Greece, and the application of § 2251(a) in the case of Count 1 constitutes an improper extraterritorial application of the law.[13] Having carefully considered the

---

[12] Defendant also argues that the district court erred when it declined to dismiss Counts 1 and 3 as neither alleged that he produced the image with the intent that it be transported across any border to the Northern District of Georgia or, in the case of the image produced in Greece, even to the United States. This argument deserves little attention as the behavior prohibited by § 2251(a) is punishable "if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed," "if such visual depiction has actually been transported in interstate or foreign commerce or mailed," or "if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer." Counts 1 and 3 clearly allege that the images were actually transported from Greece to Georgia and from South Carolina to Georgia, respectively. Further, Count 3 alleges that the depictions were created using a camera which had been mailed, shipped, or transported in interstate commerce. Accordingly, the conduct alleged in Counts 1 and 3 of the Fourth Superseding Indictment would constitute a violation of § 2251(a), and the district court did not err when it declined to dismiss Counts 1 and 3 on these grounds.

[13] Defendant does not argue that Congress was without power to enact 18 U.S.C. § 2251(a) or that the application of § 2251(a) would violate due process. *See United States v. Pinto-Mejia*, 720 F.2d 248, 259 (2d Cir. 1983) (Congress may apply its penal statutes to extraterritorial acts unless application would violate due process). Thus, whether 18 U.S.C. § 2251(a) applies to Kapordelis's acts abroad is a question of statutory interpretation for this

statute itself, however, we are of the opinion that Congress intended for 18 U.S.C. § 2251(a), as in effect at the time of Kapordelis' conduct, to apply regardless of whether the violation occurred on American soil or abroad, so long as the behavior has a sufficient nexus with this country. In this case, Kapordelis transported his pictures from Greece into the United States. That is clearly sufficient.

Section 2251(a) does not explicitly prohibit conduct outside of the United States, but neither is its application limited to instances where the wrongdoer commits the entire violation within the territory of the United States.[14] Rather, the statute is part of a comprehensive statutory scheme to eradicate sexual exploitation of children, *see* 18 U.S.C. §§ 2241-2257, in which Congress has outlawed the transportation, mailing, and receipt of child pornography. *See United States v. Thomas*, 893 F.2d 1066, 1069 (9th Cir. 1990). "Punishing the creation of child pornography outside the United States that is actually, is intended to be, or may

Court. *See Blackmer v. United States,* 284 U.S. 421, 437 (1932); *United States v. Plummer*, 221 F.3d 1298, 1304 (11th Cir. 2000) ("Whether Congress has in fact exercised [its authority to create law with extraterritorial application] . . . is a matter of statutory construction.").

[14] Defendant also argues that the 2003 enactment of the PROTECT ACT, including that portion codified at 18 U.S.C. § 2251(c), demonstrates that § 2251(a) did not reach and that Congress did not intend it to reach extraterritorial sexually explicit conduct with children prior to its passage. While § 2251(c) addresses the act of using a child outside the United States for the purpose of producing images of child pornography which the defendant intends to or does transport to the United States, the passage of that statute did not retroactively restrict the scope of the application of the preexisting portion of the statute, § 2251(a). *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) (implied repeals of one statute through enactment of another are not favored) (citations omitted).

20

reasonably be expected to be transported in interstate or foreign commerce is an important enforcement tool." *Id*. Thus, we conclude that Congress intended to reach extraterritorial acts, such as those of Kapordelis, that otherwise satisfy the statutory elements of 18 U.S.C. § 2251(a) if they were produced using equipment that had traveled into or out of the United States, if the visual depictions were imported or transmitted into the United States, or if the defendant believed or had reason to believe that they would be. The district court did not err when it denied Defendant's motion to dismiss Count 1 on these grounds, and its decision shall be affirmed.

### 2. Venue

Defendant next contends that the district court should have dismissed Counts 1 and 3 because the alleged "use" of a minor in and the production of images of sexually explicit conduct, the actions specifically outlawed by 18 U.S.C. § 2251(a), occurred in either Greece or South Carolina, not in the Northern District of Georgia. He argues that the indictment alleges only that he possessed sexually explicit images of a minor in Georgia, which conduct, by itself, is not prohibited by § 2251(a). As such, he theorizes that venue in the Northern District of Georgia was inappropriate and that the district court erred when it declined to dismiss those counts of the Fourth Superseding Indictment for inappropriate venue. We disagree.

No doubt, a criminal defendant has a right to have his case adjudicated in

the appropriate venue, i.e., in the state and district where the crime or crimes with which he has been charged were committed. U.S. CONST. art. III, § 2, cl. 3 (the "Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed"); U.S. CONST. amend. VI (trial of criminal defendants shall be "by an impartial jury of the State and district wherein the crime shall have been committed"); *see also* FED. R. CRIM. P. 18 ("prosecution shall be had in a district in which the offense was committed"). "'[T]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Cabrales*, 524 U.S. 1, 6 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1996)). Where a crime "involv[es] the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States," the offense is a "continuing crime," i.e., one which begins in one district and is completed in another. 18 U.S.C. § 3237(a); *United States v. Rodriquez-Moreno*, 526 U.S. 275, 279-81 (1999). In such instances, venue is proper in any district in which the offense was started, continued, or completed. *Id*.

Section 2251(a) includes among its required elements that (1) that the defendant must know or have reason to know that "such visual depiction will be transported in interstate or foreign commerce or mailed," (2) that the "visual

22

depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce," or (3) that the "visual depiction has actually been transported in interstate or foreign commerce or mailed." Count 1 alleges that the digital photographs were transported from Greece to Georgia and Count 3 alleges that the digital photographs were transported from South Carolina to Georgia and created using a camera that had been "mailed, transported and shipped in interstate and foreign commerce."

While neither the transportation of an image allegedly produced in violation of § 2251(a) from another jurisdiction nor the possession of such an image in the Northern District of Georgia changes the location of the "use" or "production" elements from Greece or South Carolina, as Defendant argues, § 2251(a) ties the punishment for the "use" of a minor in and "production"of visual depictions of sexually explicit conduct to the transport of the visual depictions or the means of producing those visual depictions in interstate or foreign commerce. Thus, under 18 U.S.C. § 3237, the violation of § 2251(a) as alleged in Counts 1 and 3 is a "continuing offense." Venue in the Northern District of Georgia into which the images (and the camera, in the case of Count 3) moved, was appropriate, and the decision of the district court shall be affirmed.

B.      Motion to Suppress

23

Defendant next complains that the district court erred when it denied his motion to suppress evidence seized during searches of his home and office because the district court declined to hold an evidentiary hearing under *Franks v. Delaware* to evaluate his allegations of misrepresentations and omissions in the affidavit as to events which transpired in Russia. He argues, as well, that the district court erroneously concluded that, based on the evidence in the affidavit, there was sufficient probable cause to conclude that evidence of a crime would be found in his home.[15]

Generally, a district court's "decision about whether to hold an evidentiary hearing lies within the court's sound discretion and will be reviewed only for an abuse of discretion." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006). This Court has not, however, stated a precise standard of review for a district court's denial of a *Franks* hearing. *See id*. As "'the more exacting *de novo* standard of review is satisfied'" here, we need not determine which standard of review applies today. *Id.* (quoting *United States v. Stewart*, 306 F.3d 295, 304 (6th

---

[15] We note that a hearing was held so that the court could assess Defendant's *Franks* allegations concerning statements from Defendant's co-workers about the witnesses' knowledge of computers in his home, his behavior in Georgia (notably, the presence of young men from abroad in his home), and the actions of ICE agents in New York. During that hearing, of which Defendant does not complain, Defendant was given the opportunity to present witnesses and cross-examine the affiant and one of the agents who arrested him. Accordingly, we are concerned solely with the district court's decision not to hold an evidentiary hearing as to the information contained in the affidavit about Defendant's activities while in Russia.

24

Cir. 2002)). Whether there was probable cause to support a search warrant is a question reviewed *de novo*, but the Court must "'take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

For the reasons stated below, we conclude that the district court did not err when it declined to hold a *Franks* hearing nor did it err in concluding that the affidavit, when considered in the edited form urged by Defendant, provided sufficient probable cause to believe that evidence of a crime would be found in Defendant's Gainesville home.

### 1. *Franks* **Hearing**

Affidavits supporting arrest warrants are presumptively valid. *Franks v. Delaware,* 438 U .S. 154, 171 (1978). In order to be entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit, a defendant must make a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false, and that the false statements were necessary to the finding of probable

cause. *Id.* When assessing whether the alleged false statements and omissions were material, the trial court is to disregard those portions of the affidavit which the defendant has shown are arguably false or misleading. *Id*. at 171-72. "[E]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997). Looking only at the remaining portions of the affidavit, the court will then determine whether including the omitted facts would have prevented a finding of probable cause. *Id*. The defendant bears the burden of showing that, "absent those misrepresentations or omissions, probable cause would have been lacking." *United States v. Novaton,* 271 F.3d 968, 987 (11th Cir. 2001). "'[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.'" *Id.* (quoting *Franks*, 438 U.S. at 171-72); *United States v. Cross*, 928 F.2d 1030, 1040 (11th Cir. 1991).

Defendant concedes that, in considering his motion to suppress, the magistrate judge "remove[d] all the tainted information, . . . transplant[ed] into the text the material omissions" averred by Defendant, "and then stepped back to see if the new product was viable." (Appellant's Br. at 31.) Kapordelis urges us to

conclude that doing so was simply not enough because, "when the false information pervades the affidavit and when the omissions are so substantial[,] . . . the substitute affidavit bears no resemblance to the affidavit signed by the Agent and considered by the magistrate." (*Id*. at 31-32.) Without citation to any legal authority to support his position, Defendant asks us to conclude that a hearing was necessary in order to explore his allegations of flagrant misrepresentations or omissions which were the result of flawed information provided to American agents by Russian law enforcement agents. We decline this invitation.

As there is no dispute that the magistrate judge undertook the evaluation prescribed by *Franks* and considered the affidavit with the omissions and additions proposed by Defendant, the Court is not persuaded that the trial court erred in declining to hold a *Franks* hearing.

### 2. Probable Cause

Probable cause to support a search warrant exists when the totality of the circumstances allows the conclusion that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). Where a warrant to search a residence is sought, the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant

27

might keep evidence of his crimes at his home, i.e., a "safe yet accessible place."

*United States v. Feliz*, 182 F.3d 82, 87-88 (1st Cir. 1999).

With regard to a suspect's home:

> The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime.

*United States v. Green*, 634 F.2d 222, 226 (5th Cir. Unit B Jan. 1981). There need not be an allegation that the illegal activity occurred at the location to be searched, for example the home, but "the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002); *see United States v. Anton*, 546 F.3d 1355, 1358 (11th Cir. 2008) (evidence of possession of contraband of type normally expected to be hidden in residence will support search); *United States v. Jenkins*, 901 F.2d 1075, 1080-81 (11th Cir. 1990) (nexus between items to be seized and defendant's home can be established circumstantially where contraband is capable of being hidden in residence). *But see Green*, 634 F.2d at 226 (convenience of defendant's residence "for use as a place to plan and hide fruits of the crime [was] thus diminished, if not eliminated"

28

where alleged obstruction of justice, suborning of perjury, and violations of citizen's civil rights took place thousands of miles from home in absence of other evidence linking residence and the criminal activity).

Defendant argues that the evidence seized under the warrant to search his home should have been suppressed as the affidavit in support of that warrant did not provide probable cause to believe that he was either a collector or producer of child pornography and might, thus, have child pornography in his home. In support of his argument, Defendant relies on the decision in *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002), in which the Third Circuit held, in part, that an affidavit which did not provide any facts at all upon which one could conclude that child pornography would be found in a home was insufficient to provide probable cause for a search for child pornography.[16] *Id.* at 432-33. Considering the facts presented in the affidavit in this matter, *Zimmerman* is easily distinguishable.

In this matter, a warrant was sought so that a search of Defendant's home could be conducted for evidence "concerning a violation of [18 U.S.C. §§] 2252(a)

---

[16] In *Zimmerman*, the Third Circuit also held that the affidavit provided no probable cause to search for particular images of adult pornography which were allegedly shown to the defendant's molestation victims because the information that such evidence was present at the defendant's home was stale. *United States v. Zimmerman*, 277 F.3d 426, 433-36 (3d Cir. 2002). Defendant does not, however, argue that the facts presented in the affidavit at bar were not derived from sufficiently contemporary information to demonstrate probable cause that evidence of child pornography or sex tourism would be found in his home.

[sexual exploitation of minors, i.e., producing, receiving, and possessing child pornography], 2252(A) [sic] [same] and 2423(b) [sex tourism]." Among the items sought under the warrant were (a) documents related to travel for the purpose of engaging in sexual activities with minors, (b) documents and other materials evidencing solicitations of minors to engage in sexually explicit conduct, (c) items which provided the identity of the minors found in any sexual explicit images, and (d) medications that render persons unconscious or unaware that might be used for purposes of engaging in sexually explicit conduct with minors.

The affiant asserted that there existed probable cause to believe that "evidence, fruits and instrumentalities of trafficking, receipt, distribution, and/or possession of visual depictions and other related materials, involving minors engaging in sexually explicit conduct" would be found in Kapordelis's home. Once the affidavit was edited under *Franks*, there remained evidence that Defendant endeavored to and had traveled to Russia where he had spent time in the company of several young boys, that at least two and maybe three boys had complained of molestation by Kapordelis while he was in Russia, that Defendant had created images of boys while in Russia, and that Defendant had an interest in juvenile boys predating his travel to Russia on the occasion of his arrest.[17] Further,

---

[17] Other courts have considered a defendant's "extreme interest in young children" in determining whether to issue a search warrant where a defendant is accused of possession and

30

it was clear from the edited affidavit that Defendant had the means to obtain and store documents and items related to his travel, as well as any images and other data that he had gathered in advance of that travel or created or collected during that travel, on a computer located in his home and by means of access to the Internet from his home. Giving due weight to inferences drawn from the facts by the magistrate judge who issued the search warrant and the law enforcement officers investigating Kapordelis's activities, we conclude that there was probable cause to support the issuance of a search warrant for Kapordelis's home. The evidence presented by the affiant, once edited under *Franks*, was sufficient to provide a reasonable basis for concluding that Defendant could be engaged in sex tourism and that Defendant would reasonably keep evidence of such activities, including sexually explicit images of children, in his home, a place where one might ordinarily orchestrate travel, keep information about one's travel, and make plans for activities – whether legal or illegal – while on a trip.

We reject Defendant's argument that there was an insufficient nexus between allegations that he was engaging in the production of child pornography,

---

distribution of child pornography. *See United States v. Hay*, 231 F.3d 630, 632-34 (9th Cir. 2004) (finding that court properly considered a defendant's "extreme interest in young children" in affirming the issuance of a search warrant for defendant's computer for evidence of possession and distribution of child pornography). This Court believes that Defendant's interest in young boys is no less relevant in determining whether to issue a search warrant in this matter where sex tourism and producing, receiving, and possessing child pornography is alleged.

the evidence of sex tourism sought under the warrants, and the likelihood that evidence of those crimes would be found in his home. Using common sense in evaluating the facts, the necessary "nexus" existed between the facts surrounding Defendant's travel to Russia, the facts which suggested that he met and engaged in sexual activity with young boys and the assertion that evidence of sex tourism and child pornography would be found in Defendant's home. *See Anton*, 546 F.3d at 1358. Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

### 3. Additional Arguments Waived

Defendant has also presented two undeveloped arguments to the Court in his brief. Citing "word limitations" on his brief, he first "urges the Court to consider the detailed legal arguments made in the lower court about the inapplicability" of the border search or search incident to arrest doctrines upon which the lower court relied to deny his motion to suppress evidence contained on his computer seized at John F. Kennedy International Airport upon his return from Russia, i.e., at the border. (Appellant's Br. at 36.) Defendant also asks this Court to consider his argument that, if the Court determines that the Fourth Amendment does not require suppression of certain evidence, "the Due Process Clause provides an alternative avenue for relief." (*Id.* at 37.) He offers no support for that claim in his brief

32

except to refer the Court to the reasons "set forth in [lower court] pleadings." (*Id.*)

"We have rejected the practice of incorporating by reference arguments made to

the district courts." *Anderson v. Sec'y for the Dep't of Corr.*, 462 F.3d 1319, 1331

(11th Cir. 2006) (citing *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr

S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004)).  As Kapordelis has not properly

presented these arguments for review, they are waived on appeal, and we decline to

consider them further.

## C.     Admission of Evidence under FED. R. EVID. 404(b)

Defendant next argues that the district court erred when it admitted

testimony from Chris Williams and Lester Andrews that Defendant solicited sex

from boys in exchange for money while in Prague.  Specifically, Defendant argues

that his activity with males under the age of eighteen was legal in the Czech

Republic and, thus, there was no evidence of a crime or wrong that could be

admitted under Federal Rule of Evidence 404(b).[18]  Defendant further argues that

the evidence should have been excluded, even if it was admissible under Rule

404(b), because it was irrelevant to the charges of receipt, possession, or

production of child pornography in the indictment, it was unfairly prejudicial, and,

---

[18]  Defendant also argues that the admission of certain unspecified emails and text messages was erroneous for the same reasons.  As he fails to cite with any specificity as to which trial exhibits he claims error, he has waived these issues on appeal.

thus, it was inadmissible under Federal Rule of Evidence 403.

Because Kapordelis properly objected at trial to the relevant rulings, we review the district court's evidentiary rulings for abuse of discretion. *United States v. Henderson,* 409 F.3d 1293, 1297 (11th Cir. 2005). Factual findings underlying evidentiary rulings are reviewed for clear error. *United States v. Dickerson*, 248 F.3d 1036, 1046 (11th Cir. 2001). Rule 404(b) "is a rule of inclusion, and . . . accordingly 404(b) evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case." *United States v. Jernigan,* 341 F.3d 1273, 1280 (11th Cir. 2003) (internal citations and quotations omitted).

As an initial matter, there is no merit to Defendant's argument that evidence of his trysts with boys in Prague cannot be admitted under Rule 404(b) even if such actions were legal under the law of the Czech Republic. Rule 404(b) straightforwardly provides for the admission of evidence of "other crimes, wrongs, or acts" and is not limited to criminal acts. Thus, evidence of "other acts," whether unlawful in the jurisdiction where they take place or not, is admissible under Rule 404(b) if there is sufficient proof to support a jury's finding that the defendant committed the similar act and the other act is probative of a material issue other than the defendant's character. *See Dickerson*, 248 F.3d at 1046-47.

Defendant concedes that he engaged in sexual acts with minors while he was

34

in Prague, so the first issue before us is whether this evidence was probative of a material issue and not offered to prove Kapordelis's character "in order to show action in conformity therewith." FED. R. EVID. 404(b). We are persuaded that it is. Kapordelis asserted "identity" and "knowledge" defenses when he argued that someone else took the photos of his cousin and former patient found in his home and that someone else downloaded child pornography onto his computer or, alternatively, that it happened automatically. Evidence that Defendant traveled abroad in order to engage in sexual trysts with underage boys in Prague was, thus, admissible under 404(b) as "proof of . . . knowledge, identity, or absence of mistake or accident" and intent with regard to his travel with his cousin and his former patient during which sexually explicit images of the boys were created and with regard to his collection of pornographic images of children. *See United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002) (404(b) evidence of an uncharged instance of molestation of minor admissible in child exploitation case to show defendant's state of mind and modus operandi, and to rebut attack on witness credibility).

We must next consider whether, as Kapordelis argues, the probative value of that evidence was outweighed by its unduly prejudicial nature, such that it must be excluded under Federal Rule of Evidence 403. Demonstrating that a piece of

35

evidence is prejudicial is not enough to warrant exclusion under Rule 403 by itself

since virtually all evidence presented against a criminal defendant can be

considered prejudicial. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1119

(11th Cir. 1990). Rather, exclusion is warranted only when the evidence creates a

danger of unfair prejudice that substantially outweighs the probative value of the

evidence. *Id.* Exclusion under Rule 403 is an "extraordinary remedy" that should

be "used sparingly." *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir.

1992) (quoting *United States v. Norton*, 867 F.2d 1354, 1361 (11th Cir. 1989)).

Defendant's identity and knowledge defense considered, the probative value of the

prior bad acts was substantial and outweighed the prejudicial effect in this

instance.[19]

We conclude the district court properly admitted the testimony of Chris

Williams and Lester Andrews regarding Defendant's sexual exploits with boys in

Prague. Defendant raised the defenses of lack of identity and lack of knowledge

regarding who took the photographs or downloaded pornographic material to his

---

[19] Defendant argues, in passing, that the district court failed to give an appropriate cautionary instruction to the jury regarding this evidence. The district court, however, cautioned the jury three times about how to consider 404(b) evidence. As well, Defendant chose to focus the jury's attention on his conduct in Prague in his opening argument, well before the district court ruled on his objection, and throughout the trial. We are not persuaded that the jury was not adequately instructed on the proper use of this evidence nor do we feel inclined to point a finger at the district court for some perceived failure to protect Defendant from any prejudice which resulted from the presentation of this evidence when Defendant placed it squarely before the jury in his opening argument at trial and on multiple other occasions.

36

computers, making that evidence relevant, and, in any event, Defendant preemptively presented the fact of his conduct in Prague before the jury. As there was no abuse of discretion on the part of the district court, we will affirm its decision to admit testimony from Chris Williams and Lester Andrews.

## D. Sentencing

We engage in a two-step process when reviewing a sentence: (1) we ensure that no procedural error occurred, such as the district court improperly calculating the Guidelines, basing a sentence on clearly erroneous facts, or failing adequately to explain a variation from the Guidelines; and (2) we ensure that the sentence is substantively reasonable. *United States v. Livesay*, 525 F.3d 1081, 1091 (11th Cir. 2008). For the reasons which follow, we conclude that the district court did not err and that Kapordelis's sentence was reasonable.

## 1. Choice of Guidelines Manual Edition

We review *de novo* questions of law dealing with the Guidelines. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Pursuant to the Ex Post Facto Clause, if applying the Guidelines in effect at the time of sentencing would result in a harsher penalty, a defendant must be sentenced under the Guidelines in effect at the time when he committed the offense. *United States v. Masferrer*, 514 F.3d 1158, 1163 (11th Cir. 2008). While we have held that the district court must

correctly calculate the Guidelines before imposing a sentence, we are not required to vacate a sentence if it is likely that, under the correctly calculated Guidelines, the district court would have imposed the same sentence. *United States v. Scott*, 441 F.3d 1322, 1329 (11th Cir. 2006). Here, while the use of the 2002 Guidelines would have resulted in fewer enhancements to Kapordelis's grouping for the receipt and possession charges, the record indicates that the district court would have imposed the same 420-month sentence had it applied the 2002 Guidelines. Ultimately, the district court varied upward to the statutory maximum, demonstrating its intention to give Kapordelis the longest sentence that it could, based on Kapordelis's long history of abuse, parity, and the need for incapacitation. These factors would have remained relevant had the 2002 Guidelines been used. U.S.S.G. app. C, Amend. 649. Accordingly, any error in using the 2003 Guidelines was harmless, and this Court does not need to address whether the district court erred in using the 2003 Guidelines. *See Scott*, 441 F.3d at 1329.

### 2. Guidelines Calculation

We review *de novo* a claim of double counting under the Guidelines. *United States v. Lebovitz*, 401 F.3d 1263, 1270 (11th Cir. 2005). Double counting occurs "when one part of the Guidelines is applied to increase a defendant's punishment

on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Naves*, 252 F.3d 1166, 1168 (11th Cir. 2001). Double counting "is permitted if the Sentencing Commission intended the result, and if the result is permissible because each section concerns conceptually separate notions related to sentencing." *Id.* "'Absent a specific direction to the contrary, we presume that the Sentencing Commission intended to apply separate sections cumulatively,' and, as a result, a defendant asserting a double counting claim has a tough task." *Lebovitz*, 401 F.3d at 1270 (quoting *Naves*, 252 F.2d at 1168).

The 2003 Guidelines applied by the sentencing court provide for a 2-level enhancement when 10 or more child pornography films are possessed, *see* U.S.S.G. § 2G2.4(b)(2) (2003), and a 5-level enhancement when 600 or more images of child of pornography are possessed, *see* U.S.S.G. § 2G2.4(b)(5)(D) (2003). As we have already noted, however, the record indicates that the district court would have imposed the same 420-month sentence on Kapordelis had it applied the 2002 Guidelines instead of the 2003 Guidelines as the court varied upward from the Guidelines based on Kapordelis's long history of abuse, parity, and the need for incapacitation. The 2002 version of the Guidelines provides only for the 2-level enhancement when 10 or more child pornography films are

possessed, *see* U.S.S.G. § 2G2.4(b)(2) (2002), and makes no provision for the 5-level enhancement for the possession of 600 or more images of child pornography which was included in the 2003 version. *See* U.S.S.G. § 2G2.4(b)(5)(D) (2003). Thus, any error committed in applying both the 2-level enhancement and the 5-level enhancement provided for in the 2003 Guidelines was harmless, and the Court does not need to address whether the district court actually erred by double counting as a result of its application of U.S.S.G. §§ 2G2.4(b)(2) and 2G24(b)(5)(D).[20] *See Scott*, 441 F.3d at 1329. The decision of the district court shall be affirmed.

### 3. Vulnerable Victim Enhancement

Next, Kapordelis argues that the district court erred in applying a vulnerable victim enhancement because the only basis for that enhancement was that Roupas and Walker were asleep when the pictures were taken and not, thus, vulnerable targets as contemplated for the purposes of applying § 3A1.1. Defendant also claims that it was illogical for the court to conclude that taking a photograph of a sleeping child was more serious than filming a child actively engaging in sexual conduct.

---

[20] We do note, however, that we have held that it is not impermissible double counting for the district court to apply both § 2G2.4(b)(2) and § 2G2.4(b)(5) where those provisions of the Guidelines are properly applied. *United States v. Lebovitz*, 401 F.3d 1263, 1270 (11th Cir. 2005).

40

We review *de novo* the district court's application of a U.S.S.G. § 3A1.1 enhancement, as it presents a mixed question of law and fact, but give due deference to the district court's determination that a victim was vulnerable, as this is a factual finding. *United States v. Amedeo*, *370 F.3d 1305,* 1317 (11th Cir. 2004). In this instance, the boys qualified as "vulnerable victims" under the Guidelines because they were asleep or otherwise nonresponsive and, thus, unable to object or respond in anyway when Kapordelis' pulled down their underwear and exposed their genitalia or anuses for the camera. *See United States v. Wetchie*, 207 F.3d 632, 634 (9th Cir. 2000) (sleeping victim of sexual abuse was "unusually vulnerable" to defendant's conduct due to "physical condition" or "otherwise particularly susceptible to [his] criminal conduct"); *United States v. Plenty*, 335 F.3d 732, 735 (8th Cir. 2003) (sleeping victim of burglary was vulnerable for purposes of U.S.S.G. § 3A1.1(b)(1)); *United States v. Newsom*, 402 F.3d 780, 785 (7th Cir. 2005) (sleeping victim was vulnerable where defendant moved victim's underwear so as to get better shots of her genitals, which would have been impossible had victim been awake). The application of the vulnerable victim enhancement by the district court was not error, and the decision of the district court is affirmed.

### 4. Victim Impact Statement

Kapordelis also argues that the district court should not have received Walker's victim impact statement at sentencing because there was no evidence that it came from Walker, and Kapordelis did not have notice of the statement in time to rebut it. However, any error in receiving Walker's victim impact statement was harmless, as the district court did not rely on the statement, and thus, it is likely that the court would have imposed the same sentence even had it excluded the statement. *Scott*, 441 F.3d at 1329.

### 5. Departure or Variance

Defendant next argues that the Court improperly departed from the Guidelines. In determining whether the district court applied an upward departure under the Guidelines or a variance under the 18 U.S.C. § 3553(a) factors, we consider whether the district court cited to a specific guideline departure provision and if the court's rationale was based on its determination that the Guidelines were inadequate. *See United States v. Eldick*, 443 F.3d 783, 788 n.2 (11th Cir. 2006). In this matter, although the district court stated that it was granting the United States' "motion for an upward departure," the district court actually granted a variance under the § 3553(a) factors. The court did not cite to a specific guideline departure provision, and its rationale was based on the § 3553(a) factors and its finding that the Guidelines were inadequate. *Eldick*, 443 F.3d at 788 n.2; *United States v.*

42

*Talley*, 431 F.3d 784, 786 (11th Cir. 2005). As the court granted an upward variance and not a departure, the district court did not improperly depart from the Guidelines.

### 6. Reasonableness

Finally, we review the sentence imposed by the district court for reasonableness. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). In *Gall v. United States*, 552 U.S. ___, 128 S.Ct. 586, 591, 594 (2007), the Supreme Court clarified that, in a review for reasonableness, an appellate court is to review sentencing decisions for an abuse of discretion, even when the sentence is significantly outside of the Guidelines, but the degree of deviation from the Guidelines remains relevant.

Attaching "great weight" to a single § 3553(a) factor does not automatically make a sentence unreasonable, but, when viewed under the totality of the circumstances, an unjustified reliance on a single factor may result in an unreasonable sentence if the court relied on impermissible factors or ignored other relevant § 3553(a) factors. *United States v. Pugh*, 515 F.3d 1179, 1192 (11th Cir. 2008). When a sentence is outside of the Guidelines, the degree of the variance must be supported by a "sufficiently compelling" justification, and the district court must explain its reasoning for the sentence in order to permit meaningful

appellate review.  *Livesay*, 525 F.3d at 1090.  The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to the victims.

*Talley*, 431 F.3d at 786 (11th Cir. 2005) (citing 18 U.S.C. § 3553(a)).

In *Pugh*, this Court held that the district court abused its discretion by imposing a non-custodial sentence when the defendant pled guilty to possessing child pornography, as the district court focused exclusively on one of the § 3553(a) factors, Pugh's history and characteristics, and ignored other relevant statutory factors, including (1) deterrence, (2) the need to promote respect for the law, (3) the need to provide a just punishment, (4) pertinent policy statements, (5) providing a sufficient justification for the variance, (6) the need to protect the public, and (7) the need to avoid unwarranted sentencing disparities.  *Pugh*, 515 F.3d at 1182-84, 1192, 1194-1203.  In discussing the need to avoid unwarranted disparities, this Court summarized recent sentences for child sex offenses in which we had upheld (1) 78 months' imprisonment for possession of child pornography;

44

(2) 360 months' imprisonment for receipt, distribution, and possession of child pornography; (3) 97 months' imprisonment for use of the internet to entice a minor to engage in sexual activity; (4) 84 months' imprisonment for distribution of child pornography; (5) 120 months' imprisonment for use of the internet to entice a minor to engage in sexual activity; (6) 72 months' imprisonment for distribution of child pornography; and (7) 31 months' imprisonment for possession of 13 images of child pornography. *Id*. at 1202-03. In *Scott*, this Court affirmed the defendant's 135-month sentence for (1) using the internet to entice a minor for sexual activity, (2) traveling in interstate commerce to engage in sexual activity with a minor, and (3) crossing a state line with the intent to engage in sexual activity with a minor under the age of 12. *Scott*, 426 F.3d at 1325.

Here, in granting an upward variance, the district court did not rely on one of the statutory factors exclusively, but relied on several of the § 3553(a) factors, including (1) the nature and circumstances of Kapordelis's offense, by considering the number of images that he possessed, (2) Kapordelis's history and characteristics, including his history of abusing minors and lack of remorse, (3) the need to protect the public, and (4) the need to avoid unwanted sentencing disparities. *See Talley*, 431 F.3d at 786. The number of images that he possessed was a part of the nature and circumstances of his conviction, and thus, it was

45

proper for the district court to consider it in imposing an appropriate sentence. *See* 18 U.S.C. § 3553(a)(1). Additionally, we are not persuaded by Kapordelis's arguments that the number of images was never reliably established and that his case was not "out of the heartland" of child pornography cases because his argument ignores the fact that he admitted to possessing at least 500 child pornography videos.

The district court also did not abuse its discretion by granting an upward variance based on the number of images that Kapordelis possessed, as the enhancements provided for by either the 2002 or 2003 versions of the Guidelines did not fully account for the 500 videos that Kapordelis possessed or the 2,000 images that Kapordelis admitted possessing. *See* U.S.S.G. § 2G2.4(b)(2) (2002 and 2003); U.S.S.G. § 2G2.4(b)(5)(B) (2003).

Additionally, the district court did not abuse its discretion by considering Kapordelis's history of abuse and lack of remorse. Contos's testimony revealed that Kapordelis had been drugging and molesting minors for at least 20 years.[21] 18 U.S.C. § 3553(a)(1). Further, the district court's finding that Kapordelis had a history of abuse is supported by the fact that he produced child pornography on three separate occasions over a two-year period, and that, although it may have

---

[21] Kapordelis has argued that Contos's testimony was unreliable, but he provides no support for his assertion.

been legal activity in the Czech Republic, Kapordelis's main objective while in Prague was to have sex with boys under the age of eighteen.

The district court did not abuse its discretion in finding that an upward variance was necessary to protect society because it was unlikely that Kapordelis would be rehabilitated given his attitude and lack of remorse, as Kapordelis, during his allocution, continued to attack the AUSAs, instead of showing remorse, by calling them liars and comparing them to Hitler. Additionally, while Kapordelis argues that the need to protect society was an impermissible factor for the district court to consider, § 3553(a) expressly authorizes consideration of the need to protect society. 18 U.S.C. § 3553(a)(2)(C).

With regard to parity, the district court explained that the guideline range was not adequate since the defendant in *Scott,* the case to which the parties agree the district court was referring, received a ten-year sentence for traveling across state lines once to have sex with a minor. Kapordelis is correct that the district court failed to articulate why his guideline range of 262-327 months' imprisonment was disproportionately low compared to the 135-month sentence in *Scott*, and did not cite to cases involving the production of child pornography in which the defendant received shorter sentences. *Livesay*, 525 F.3d at 1090; *Scott*, 426 F.3d at 1325. However, Kapordelis's reliance on the sentences summarized in *Pugh* to

argue that his sentence is unreasonable is misplaced, as none of the sentences was for the production of child pornography. *Pugh*, 515 F.3d at 1202-03.

Contrary to Kapordelis's assertion, the district court did not base the upward departure on impermissible grounds because, while the district court commented on the fact that Kapordelis had used the applicable rules and the district court's generosity to drag out his case, the district court did not state that it was basing the upward departure on this ground. Further, Kapordelis's argument that the district court merely paid lip service to the § 3553(a) factors is inaccurate. The district court was not required to discuss each factor, and, unlike the court in *Pugh*, the district court did not ignore other relevant factors, as the 420-month sentence (1) promoted respect for the law, (2) illustrated the seriousness of the offense, and (3) will serve as a deterrent. § 3553(a)(2)(A), (B); *Livesay*, 525 F.3d at 1090; *Pugh*, 515 F.3d at 1194-1203. Based on the totality of the circumstances, the district court provided a sufficiently compelling justification to support the upward variance by basing it on Kapordelis's history of abuse, the number of images that he possessed, and the need to protect society, and thus, the district court did not abuse its discretion by imposing an upward variance. *Livesay*, 525 F.3d at 1090; *Pugh*, 515 F.3d at 1192.

The sentence was reasonable, and we affirm the sentence imposed by the

48

district court.

## III.    Conclusion

For all of the reasons stated above, Kapordelis's conviction and the decisions of and the sentence by the district court are **AFFIRMED**.