UNITED STATES of America,
Plaintiff–Appellee,

v.

Dennis Anthony NELSON,
Defendant–Appellant.

No. 15–12632
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 4, 2016.

Wifredo A. Ferrer, Emily M. Smachetti, U.S. Attorney's Office, Miami, FL, Corey Steinberg, U.S. Attorney's Office, Fort Lauderdale, FL, for Plaintiff–Appellee.

Michael Caruso, Federal Public Defender, Federal Public Defender's Office, Miami, FL, Timothy Cone, Federal Public Defender's Office, Fort Pierce, FL, Jonathan S. Friedman, Law Office of Jonathan S. Friedman, PA, Fort Lauderdale, FL, for Defendant–Appellant.

Before TJOFLAT, HULL and JILL PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Dennis Nelson appeals his 60–month sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Nelson argues that the district court erred in imposing an upward departure, pursuant to U.S.S.G. § 5K2.2, because his offense resulted in significant physical injury. Alternatively, Nelson argues that his 60–month sentence is substantively unreasonable. After review, we conclude that the district court did not impose a § 5K2.2 departure, but rather an upward variance pursuant to 18 U.S.C. § 3553(a), and affirm Nelson's sentence.

## I. FACTUAL BACKGROUND

### A. Offense Conduct

In October 2014, Nelson, a convicted felon, brought a semi-automatic pistol to a restaurant bar. Nelson removed the pistol from his waistband to show it to an acquaintance who was considering buying it. As Nelson did so, the pistol accidentally discharged, shooting a nearby bartender in the abdomen. In a post-arrest statement, Nelson admitted he had been drinking at the bar when he accidentally shot the victim.

### B. Presentence Investigation Report

The presentence investigation report ("PSI") assigned a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6), and applied a two-level reduction for acceptance of responsibility, under § 3E1.1(a), for a total offense level of 12. Nelson's criminal history category of III and offense level of 12

yielded an advisory guidelines range of 15 to 21 months' imprisonment. The PSI noted, however, that an upward departure under § 5K2.2 might be warranted if significant injury resulted from the offense conduct. In an addendum, the PSI noted that Nelson acknowledged he suffered from alcohol addiction and needed treatment.

Nelson objected to the PSI's suggestion that an upward departure may be appropriate, arguing that there was no legal victim of his firearm possession offense and the injury was accidental. The government filed a request for an upward departure pursuant to § 5K2.2. The government argued that although Nelson did not intend to shoot the victim, he "knowingly created [a] risk" of harm by bringing the firearm to a bar where he was drinking and then recklessly pulling the firearm from his pants.

### C. Sentencing

At the May 2015 sentencing hearing, the district court confirmed with the parties that the only outstanding issue was the government's departure motion. The district court asked the prosecutor whether the government sought an upward departure under the Guidelines or a variance under 18 U.S.C. § 3553(a). The prosecutor responded that the motion was for a departure under U.S.S.G. § 5K2.2, but agreed with the district court that the facts about the victim's injuries would also help the court individualize the sentence under the § 3553(a) factors.

The government called the victim to testify about the shooting and her injuries. The victim bartender testified that Nelson, who was a regular customer, was already drinking when she arrived at work. Shortly before the shooting, she served Nelson some vodka, and he appeared to be

intoxicated. The victim said that as she walked down a hallway by the bar, Nelson's "hand went out," she saw a flash, and heard a noise. The victim agreed that Nelson did not see her or mean to shoot her. The bullet pierced the victim's abdomen and fractured her hip.

After she was shot, the victim was airlifted to the hospital, where she was placed in the intensive care unit for two days, stayed for a total of twenty days, and underwent several procedures. The victim developed abscesses in her hip area where the bullet had exited and lost parts of her small intestine, liver and colon. She has a seven inch scar on her stomach, and still experiences pain. Her medical bills totaled over $152,000. The victim also suffers from depression and PTSD, takes medication, and receives weekly psychological counseling to help her deal with the emotional trauma. She has been unable to return to work.

After the victim's testimony, the district court heard argument from both parties about the propriety of a § 5K2.2 departure. The government argued that the court should depart upward to a 60–month sentence because the applicable guidelines provision did not have a specific-offense-level increase for physical injury and Nelson's conduct was reckless and culpably negligent. Nelson argued that no § 5K2.2 departure was warranted because the shooting was accidental. Alternatively, Nelson asked the court to impose a departure equal to a four-level increase in his offense level, or within the range of 27 to 33 months.

After hearing argument, the district court said it "intend[ed] to grant the government's motion," but would reserve ruling on the extent of the departure. The district court stressed, however, that it was dealing with facts and circumstances that had "not been taken into consideration by the guidelines," and that "crie[d] out for some consideration." The district court then stated it "want[ed] to hear further" and was "going to reserve judgment."

The district court calculated a total offense level of 12 and a criminal history category of III, which yielded an advisory guidelines range of 15 to 21 months' imprisonment. The parties confirmed that this was the correctly calculated range "without attaching a change based on the government's motion for an upward departure." Nelson personally addressed the district court, apologized, said that what happened was not intentional, and asked for leniency.

Both defense and government counsel argued extensively over the mitigating and aggravating factors. Afterward, the district court stated, "I've indicated that I intended to grant the government's motion that was made within the guidelines, that is, to adjust the guidelines upward because I don't think they adequately took into consideration a very important factor in this case and, that is a consequence of the act and tied directly to it." Without ruling on the motion, however, the district court stated that it had considered the advisory guidelines and that it was now "obligated to turn to another statute," and consider the 18 U.S.C. § 3553(a) factors.

The district court found credible the victim's testimony that Nelson "was feeling the effects of the alcohol" at the time of the shooting. The district court agreed that the shooting was not an intentional act. The district court described Nelson's case as a "stark example of the horrible consequences that can come even from an unintentional act," but also stressed that the relevant intentional acts included Nelson's possessing the firearm, taking the firearm into a bar, "having it with him at a time when he was consuming alcohol, [and]

the decision to display it to show it to the other person." The district court stated that it believed Nelson had a drinking problem, which was reflected in his criminal history of driving under the influence, driving on a suspended license, and restraining orders. The district court noted Nelson's sincere remorse, the lasting mental and physical consequences to the victim, and the likelihood that Nelson faced deportation and separation from his family upon his release. The district court stated that it had an obligation to impose a sentence that reflected the seriousness of the offense, promoted just punishment, and deterred Nelson and others.

The district court determined that a sentence above the advisory guidelines range was needed, as follows:

> Now, I have the right to vary, if you will, from the guidelines having considered all of the factors in Title 18. And I certainly think that the consequences of this act, the impact that it's had on [the victim], is a completely legitimate factor that the Court must consider, not only within the guidelines, as I indicated earlier, but here.

> Having considered all of those, it is the judgment of the Court that a sentence above the advisory guidelines is really mandated by the facts and circumstances of this case.

The district court imposed a 60–month sentence.

## II. DISCUSSION

### A. Departure or Variance

■ When uncertainty exists as to whether the district court applied a departure under the Sentencing Guidelines or a variance from the advisory guidelines range pursuant to the § 3553(a) factors, we examine (1) whether the district court referenced a particular departure provi-

sion, and (2) whether the district court's rationale for the chosen sentence was based on the § 3553(a) factors and a finding that the advisory guidelines range was inadequate. *See United States v. Kapordelis,* 569 F.3d 1291, 1316 (11th Cir.2009). When the district court correctly calculated the guidelines range, found that the range did not address adequately the § 3553(a) factors, and did not cite a specific departure provision, this Court has concluded that the above-guidelines sentence involved a variance rather than a departure. *See, e.g., United States v. Irizarry,* 458 F.3d 1208, 1211–12 (11th Cir.2006), *aff'd,* 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008). We have done so even when the district court said it was granting a "motion for an upward departure." *See Kapordelis,* 569 F.3d at 1316.

Here, although the district court initially indicated it intended to grant the government's motion for an upward departure, it did not do so in the end. Instead, after hearing from the parties, the district court made an explicit finding that the advisory guidelines range did not adequately take into consideration the consequences of Nelson's offense and turned to the § 3553(a) factors. The district court discussed in particular the seriousness of the offense, including Nelson's decision to bring a firearm to a bar, consume alcohol, and then display the firearm and the tragic and lifelong consequences of that decision to the victim; Nelson's history and characteristics, including his alcohol addiction, criminal history, likely deportation and sincere remorse; and the need for the punishment to afford deterrence and reflect the seriousness of Nelson's offense. The district court stressed that it "ha[d] the right to vary ... from the guidelines having considered all of the factors in Title 18" and that the consequences of Nelson's actions, including their effect on the victim, was "a completely legitimate factor that

the Court must consider, not only within the guidelines, as [the court] indicated earlier, but here." In explaining the ultimate sentence, the district court did not cite U.S.S.G. § 5K2.2 or refer to the government's departure motion.

Because the district court's rationale for the 60–month sentence did not refer to U.S.S.G. § 5K2.2 and was based on the 18 U.S.C. § 3553(a) factors and its finding that the advisory guidelines range was inadequate, the district court's decision is properly considered an upward variance, not a departure. *See Kapordelis,* 569 F.3d at 1316.

### B. Substantive Reasonableness

In choosing a sentence, the district court must consider the 18 U.S.C. § 3553(a) factors, but is not required to address each factor explicitly. *United States v. Gonzalez,* 550 F.3d 1319, 1324 (11th Cir.2008).[1] The weight to be given any specific § 3553(a) factor is within the discretion of the district court. *United States v. Clay,* 483 F.3d 739, 743 (11th Cir.2007). If a district court imposes a variance, the district court should explain why the variance is appropriate, and the justification "must be sufficiently compelling to support the degree of the variance." *United States v. Moran,* 778 F.3d 942, 983 (11th Cir.2015) (quotation marks omitted).

The party challenging the sentence has the burden to show the sentence is substantively unreasonable in light of the record and the § 3553(a) factors. *United States v. Tome,* 611 F.3d 1371, 1378 (11th Cir.2010). We review the substantive reasonableness of a sentence under the deferential abuse of discretion standard. *Gall v. United States,* 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). We give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance, and do not require extraordinary circumstances or presume the variance is unreasonable. *Id.* at 47, 51, 128 S.Ct. at 594–95, 597; *United States v. Irey,* 612 F.3d 1160, 1186–87 (11th Cir.2010) (en banc). We will vacate such a sentence only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey,* 612 F.3d at 1190 (quotation marks omitted).

■ Here, Nelson has not shown that the 60–month sentence was substantively unreasonable.[2] While the 39–month variance is substantial, the sentence is still well below the ten-year statutory maximum for Nelson's offense. *See* 18 U.S.C. § 924(a)(2); *Gonzalez,* 550 F.3d at 1324 (explaining that a sentence imposed well

---

1. The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing dispar-

ities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

2. We note that even if the district court had imposed an upward departure under U.S.S.G. § 5K2.2, rather than a variance, there would be no abuse of discretion. The record established that the victim sustained "major, permanent disability," and that Nelson, by his actions, "knowingly create[d] the risk of harm," making a substantial departure appropriate. *See* U.S.S.G. § 5K2.2.

below the statutory maximum is an indication of reasonableness). The district court explained that the consequences of Nelson's firearm possession, which were not accounted for in Nelson's advisory guidelines range, justified the extent of variance. The victim's testimony established that those consequences were extremely severe. The victim was hospitalized for twenty days, incurred $152,000 in medical bills, continued to suffer both physically and mentally, and was unable to return to work seven months after the shooting. The district court also explained that while Nelson did not intend to shoot the victim, the intentional conduct that supported the upward variance was Nelson's reckless decision to take the loaded firearm into the bar, to proceed to get drunk, and then to pull the firearm from his pants, causing the firearm to discharge. Contrary to Nelson's assertion, the district court did not punish him for unintentional conduct but for the particularly dangerous manner in which he committed his firearm offense.

Nelson contends the extent of the variance was not justified because it is greater than the offense-level adjustments for similar injuries under the Sentencing Guidelines. As an example, Nelson points to the six-level increase for permanent or life-threatening injuries under U.S.S.G. § 2B3.1(b)(3)(C) in robbery offenses. Nelson's argument, however, ignores that many provisions in the Sentencing Guidelines that provide a multi-level adjustment for a victim's permanent or life-threatening injury also provide for a multi-level adjustment if a firearm was discharged, for a total cumulative adjustment of between ten and twelve levels. *See, e.g.* U.S.S.G. §§ 2A2.2(b)(2)(A), (3) (allowing for a cumulative ten-level adjustment for a discharged firearm and the victim's injury in aggravated assault offenses); 2L1.1(b)(5)(A), (7)(C) (providing for a total adjustment of twelve levels for a discharged firearm and permanent or life-threatening injury in alien smuggling offenses).

To take Nelson's example, U.S.S.G. § 2B3.1 calls for a seven-level increase in the offense level if a firearm was discharged, and limits the cumulative adjustments for both the firearm and the injury to eleven levels. *See* U.S.S.G. § 2B3.1(b)(2)(A), (3). If Nelson's offense level had been increased by eleven levels, his total offense level would have been 23 and his resulting advisory guidelines range would have been 57 to 71 months' imprisonment. Nelson's 60–month sentence falls at the low end of that range, suggesting the extent of district court's upward variance was justified by the circumstances of his firearm offense.

In sum, Nelson has not shown that the district court abused its discretion, or committed any reversible error, in imposing a 60–month sentence under the particularly egregious facts of this case.

**AFFIRMED.**